[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This easement dispute came to the court by virtue of a writ summons and complaint of the plaintiff, Muriel R. Stott ("plaintiff"), requesting equitable injunctive relief to restrain the defendants, Frank Dvorak, Sophie Dvorak and Connecticut Light Power Company ("defendants"), from bringing utilities along easement or right-of-way (which is called Lena Road) to the Dvorak building lot on Oxoboxo Lake in the Town of Montville, Connecticut.
Essentially, the plaintiffs claim that the defendants, Dvorak, have only a right of ingress and egress along the said easement by virtue of the limited language in the Dvorak deed; whereas the defendants, Dvorak, claim that the right derived from the deed language and the factual circumstances by which they acquired a building lot includes the right to bring utilities to the said lot. CT Page 3745
Procedurally, this case has a full history. The defendants, Dvorak, have added the defendants, James W. Hunt and Marion H. Hunt, as necessary parties because the easement (Lena Road) traverses their property as well as the property of the plaintiff, Muriel R. Stott on its way to Old Colchester Road, a public highway.
Motions for summary judgment and motions to dismiss have been filed and acted on.
At the trial, the plaintiff and the defendants, Dvorak, were represented by counsel. James and Marion Hunt were pro se parties against whom defaults had been entered prior to the trial. The defendant, Connecticut Light a Power Company, was represented by counsel who did not appear at trial, agreeing to be guided by the decision, but declining to participate.
While the complaint involves a request for injunctive relief, the parties at oral argument requested the court to make a determination with regard to their respective property interests so that their longstanding dispute could be finally resolved.
At the trial the plaintiff produced the testimony of the defendant, James W. Hunt, who provided some important historical information about the general neighborhood in which the property of the plaintiff and the defendants is located on Oxoboxo Lake in the Town of Montville, Connecticut as shown on Plaintiff's Exhibit 1 and Defendants' Exhibit 1. Mr. Hunt testified and the court finds proven that the land around the perimeter of Oxoboxo Lake was divided up into lots and sold off beginning in the late 1940's. Also it is found that in the late 1940's there were three or four structures on the lots along the lake in the area shown on Plaintiff's Exhibit 1. Access to these structures at that time was obtained along and over a private right-of-way leading from a public road known as Old Colchester Road. Both the private driveway and the public road were dirt roads in the 1940's. That private driveway or right-of-way is now known as Lena Road. Lena Road is still a dirt road and has been illustrated for the court by various exhibits introduced by each of the parties. Lena Road was then and remains now the only access to these properties from a public highway for travel. Mr. Hunt testified that the defendants, Dvorak, acquired their property in 1954 and 1956 from the witness's father, James R. Hunt. The property was CT Page 3746 acquired in two parcels. Mr. Hunt testified that the property was low nearly lake level and wet during wet weather; dry when the weather was not wet. He did not consider it suitable for building but that was later contested by the defendants, Dvorak. He testified as to certain filling operations which he claims the defendants, Dvorak, conducted during the period of their ownership. He admitted in his testimony that Dvorak built a foundation in about 1957 which was capped with a tar paper roof. Mr. Hunt has consistently contested the Dvorak's right to bring electricity to their property since he first became aware of their request to do so in about 1986. His activity in that regard included writing letters to the Connecticut Light Power Company and informing the Montville Zoning Board of Appeals of his opinion about the extent of the easements.
The plaintiff also produced the testimony of Muriel R. Stott, the plaintiff in the action, who is the owner of Lot 11 and the lot designated as "PQ" on Plaintiff's Exhibit 1. The plaintiff testified that the other properties along the lake area shown on Plaintiff's Exhibit 1 and Defendants' Exhibit 1 had electricity but that the electric wires did not come down Lena Road from Old Colchester Road for the other properties. Instead, it was brought down an adjoining road on property to the north called Laurel Point and through the back yards of other properties to the lower end of Lena Road. She testified and the court finds that all of the cottages were "summer cottages" at the time of the defendant's acquisition of his lot, but that several have been "winterized" and are now used for year round full time occupancy. She testified that Lena Road has no electricity going down it now from Old Colchester Road and that the Dvorak's are the only ones claiming the right to bring electricity down that road from Old Colchester Road. The plaintiff testified that the reason she did not want an electric line buried under the middle of Lena Road is that she was not sure who would be responsible for the maintenance of the electric line if it were thereafter damaged. Also, she expressed concern over the continuing care, grading and maintenance of the dirt road. In this regard the plaintiff testified that the defendants, Dvorak, had not always paid their share of the road grading and maintenance in the past. No other concerns were expressed.
Beverly Conover, however, another witness presented by the plaintiff, expressed concern that roots of trees might be CT Page 3747 damaged by the digging which would be required to bury a utility line under Lena Road. Mrs. Conover testified and the court finds that all of the other houses accessed by Lena Road on land shown on Plaintiff's Exhibit 1 and Defendants' Exhibit 1 were serviced by electric power and that the Dvorak's property was the only house in the area which had no electricity. It was also clear from Mrs. Conover's testimony that while the electricity arrived at the other lots through a different road off of Old Colchester Highway, it eventually ran along side of Lena Road near the lake and at least in one place crossed over the top of Lena Road from Lot 4 to Lot 12. Mrs. Conover also testified that she felt the Dvorak's land was too low and swampy for a building lot when it was purchased, and testified as to filling by the Dvorak's which happened during the time that they built their foundation and later their house. Mrs. Conover also testified that her recollection was that the Dvorak's told the Zoning Board of Appeals that they did not need electricity for the construction of their retirement home prior to getting their permit. She also claimed and the court finds that the Dvoraks were notified of the neighbors resistance to bringing electric power to the property prior to the granting of the ZBA permit and prior to the construction of the house.
Both the plaintiff and the defendant offered considerable documentary evidence to support their various claims which are full exhibits in this case. Included among the many exhibits is the documentation necessary to establish the chains of title of the various properties involved. The plaintiff has provided the court with a outline of the chain of title material with references to the exhibit numbers which has been marked as Court Exhibit 1 for the assistance of the court.
None of the defendants have contested the titles claimed by the plaintiff in this evidence, and the court finds that the titles have been sufficiently established for all purposes necessary in this matter.
As shown on Plaintiff's Exhibit 1, Lena Road traverses property in which Muriel R. Stott and James and Marion Hunt own the fee simple interest. They own the servient estate. The defendants, Dvorak, own Lot 8, as shown on Plaintiff's Exhibit 1, which they acquired by two deeds (Plaintiff's Exhibits 3b and 3c) in 1954 and 1956 respectively. They own the dominant estate. CT Page 3748
After the plaintiff rested the defendant presented the testimony of Mr. Frank C. Dvorak. The court finds him to be a credible witness.
Mr. Dvorak testified, and the court finds to have been proven by a fair preponderance of the evidence that prior to 1954 he knew the prior owner of the property, James R. Hunt, by virtue of associations related to his activities at the Submarine Base in Groton, Connecticut. The court finds that Mr. Dvorak and his wife became interested in the property along Oxoboxo Lake when James R. Hunt, his grantor, told him that he had "a couple of lots" for sale which would make good place for a retirement home when he decided to retire from the United States Navy. After looking at the site with the grantor, James R. Hunt, the defendants purchased the first part of Lot 8 by deed dated January 23, 1954. At that time the Dvoraks were not represented by counsel and left the matter of the deed recording in the hands of the grantor, who accomplished the same in due course. After the 1954 deed (Plaintiff's Exhibit 3b) Dvorak, with his own labor, constructed footings on the property for the purposes of building a foundation. During this period of time the defendant, Dvorak, testified his grantor, Mr. Hunt, suggested that if his house on the property was to conform to the size represented by the footings being installed, he would benefit by having a larger lot, and "squaring off" the premises. For that purpose the grantor, James R. Hunt, conveyed a second triangular parcel in 1956. (Plaintiff's Exhibit 3c.) After the second deed was received a full foundation was built in 1957 out of fieldstone from a nearby farmer. The foundation was capped in 1957. This foundation was used for the house that was eventually built on the property. Dvorak testified, and the court finds proven, that he intended to use the property as a year-round retirement home when he acquired the property and when he built the footings and foundation in 1956 and 1957.
The defendant, Dvorak, retired from the Navy in September, 1958. After obtaining the necessary variance from the Montville Zoning Board of Appeals and a building permit he constructed a year-round house on the property shown in the photograph which is Defendants' Exhibit 3e.
The Dvoraks filed a petition for the extension of CT Page 3749 electrical service to the Connecticut Department of Public Utilities Control (DPUC) (Defendants' Exhibit 2) wherein they requested that CLP be required to install electric service to their property. The DPUC issued a order directing CLP to install that service and requiring that the service be contained within the Lena Road right-of-way. Two alternatives are shown as possible methods in the CLP documentation including underground service (which would require only one telephone pole) and above ground service requiring several poles (Defendants' Exhibit 2).
Neither the defendant, Hunt, or the plaintiff filed objections to the decision or appealed the same to the superior court. The DPUC's orders and the CLP's proposal would require that CLP be responsible for maintenance of any utility lines installed along Lena Road.
The defendant, Dvorak, testified that he has tentatively made arrangements with a contractor, Francis Sharkey, to complete the necessary work for the installation underground. He testified that Mr. Sharkey has indicated that it would take approximately twenty-four hours to complete the work, and that in doing so he could make arrangements for vehicles to pass and repass during that construction, even though the road is a narrow dirt road (see Defendants' Exhibits 3a, 3b). Frank Dvorak also testified that the contractor had informed him that no trees would have to be cut down to complete the under ground construction.
On cross examination Frank Dvorak testified that when he was first contacted about buying property on Oxoboxo Lake by James R. Hunt, Mr. Hunt told him that the building lot would be a "nice building lot for a retirement home," and that he had two building lots left in connection with his ownership and sale of land at Oxoboxo Lake. Mr. Dvorak indicated, and the court finds, that at the time of his purchase of property in 1954 his grantor showed him electric poles servicing other lots and told him that he would have no difficulty in getting electricity to his property. He acknowledged, however, that he never discussed going out Lena Road for the power and that at various times he had requested other neighbor's permission to take electricity from poles servicing their property rather than going back out to Old Colchester Road through Lena Road. He also acknowledged that CLP had told him that they could find no easement and that he had previously instituted a law CT Page 3750 suit claiming an easement which he later withdrew. By agreement of the parties the court will take judicial notice of the prior action identified as Docket No. CV89-0512304S. No explanation was provided to the court with regard to that proceeding, but it is noted that the defendants, Dvorak, after the withdrawal proceeded with the administrative proceeding with the DPUC represented by Defendants' Exhibit 2.
After the defendant rested the plaintiff produced some rebuttal testimony by the witness, James W. Hunt, and the parties were permitted oral argument before the court. The court provided counsel an opportunity for the filing of briefs. All parties have filed briefs throughout the course of this proceeding making clear their claims of fact and law.
Whatever rights were obtained by the defendants, Dvorak, come to them by virtue of the deeds which they obtained in 1954 and 1956 and the circumstances surrounding those transactions. No further conveyances have been received. The 1954 deed made no specific reference to an easement for any purpose. The 1956 deed grants to the Dvorak's "the right to travel by foot or by vehicle over a right-of-way leading from Old Colchester Road to the herein conveyed tract."
Very few factual disputes arose during the trial. Mostly they concerned the intended use and the condition of the lot at the time of purchase.
During the trial, the court had an opportunity to observe the appearance and demeanor of the witnesses during their testimony, to consider their bias and their interest in the outcome of the case, and to evaluate the respective conflicting factual claims which they have made. The court had an opportunity to review the evidence which has been presented, including the deeds, photographs, sketch maps and to review the related DPUC matter (Defendants' Exhibit 2) and the prior litigation. Giving consideration to those factors and that material the court makes the following factual determinations in addition to the prior findings.
It is found that at the time of the purchase of the land by the defendants, Dvorak, James R. Hunt intended to convey and the said defendants intended to purchase a "building lot" for the eventual construction of a retirement home which they all intended would be serviced by electrical service. At the CT Page 3751 time of the purchase of the first and second piece of property it was the intent of both the grantor and the grantee that access for all purposes, including utilities, would be over and across the 20 foot private right-of-way now called Lena Road. Access for both travel and utilities was then, as well as at the time of trial, necessary, convenient and beneficial for the fair enjoyment of the building lot. Also at the time of the purchase of the property the grantor, James R. Hunt, who was a personal friend of Frank Dvorak, intended that Dvorak would obtain whatever rights were required to provide electrical and other utility services to the land conveyed. It is found that bringing utilities to the Dvorak lot underground along Lena Road, pursuant to the plan in Defendants' Exhibit 2, would not unduly burden the servient estate. At the time of the conveyance the lot was not so low or swampy as to be unsuitable for a building lot. The intention to convey a building lot was made eminently clear by the second conveyance in 1956 which the court finds was intended to square off the lot and provide additional space for the home for which construction had already begun by the installation of foundation footings in 1956. The defendants, Dvorak, did not waive or relinquish whatever rights they had originally obtained by seeking to obtain electric service by other means, by constructing their house prior to the obtaining of the electric service or by instituting a previous action which was subsequently withdrawn. Nor did the knowledge that the neighbors contested these rights prior to construction of the house diminish these rights.
In 1954 and 1957 no electric lines ran from lot 8 to Old Colchester Road down Lena Road. The cottages on the lots on the lake were served by electrical service brought on poles as shown on Defendants' Exhibit 1.
The defendants Dvorak paid about $500 for their land at the time of purchase.
At the time of the acquisition of the deeds by the defendant, Dvorak, for Lot 8 on Plaintiff's Exhibit 1, James R. Hunt was the owner of Lot 10 as shown on Plaintiff's Exhibit 1 over which a portion of Lena Road passes as shown on that exhibit (see Plaintiff's Exhibit 12a). The remaining portion of Lena Road between the defendants Dvorak's Lot 8 and the Old Colchester Highway passes over the lot designated as "PQ" (which is outlined in red on Plaintiff's Exhibit 1). At CT Page 3752 the time of the two conveyances to the defendants Dvorak of Lot 8, parcel "PQ" was also owned by James R. Hunt (Plaintiff's Exhibit 2b). Therefore, it is found by the court from the evidence presented in this case, that at the time of the conveyance of Lot 8 (Plaintiff's Exhibit 1) to the defendant Frank Dvorak in both 1954 and 1956 the premises was in common ownership with the ownership of the servient estate on which was located the private road now called "Lena Road" leading from Oxoboxo Lake to Old Colchester Road. The plaintiff acknowledges this in her Trial Brief of March 16, 1994.
The plaintiff cannot prevail on her complaint for three separate and independent reasons which will be hereafter discussed: (1) The Dvoraks have an easement of necessity which includes utilities arising out of the circumstances surrounding the 1954 deed; (2) the Dvoraks have an easement including the right to electric service arising by virtue of the general grant language in the 1957 deed; and (3) the plaintiff has not sustained her burden of proving two elements, required for an injunction either that she will suffer irreparable harm or that she has no adequate remedy at law.
THE 1954 DEED GAVE RISE TO AN EASEMENT OF NECESSITY
The Court requested that the parties address whether the 1954 conveyance from James R. Hunt to the Dvoraks (Plaintiff's Ex. 3B) gave rise to an easement of necessity. "[A]n easement of necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor . . . ." Hollywyle Assn., Inc. v. Hollister, 164 Conn. 389, 398-99, 324 A.2d 247 (1973). "The basis of this right, if it exists, is the presumption of a grant or reservation arising from the circumstances of the case." Leonard v. Bailwitz, 148 Conn. 8, 11, 166 A.2d 451
(1960). The requirements for an easement of necessity were set out by the Connecticut Supreme Court in D'Amato v. Weiss,141 Conn. 713, 716-17, 109 A.2d 586 (1954):
 a) there must be unity of title between two parcels of land;
 b) during the unity of title, an apparently permanent and obvious servitude is imposed on one part of the land in CT Page 3753 favor of another;
 d) the continued use of the servitude is reasonably necessary for the fair enjoyment of the parcel which receives the benefit of the use.
All of the prerequisites for an easement of necessity are satisfied here. The evidence reveals that James R. Hunt took title to virtually all of the land beneath Lena Road by virtue of a 1943 conveyance from Edward Reynolds. (Plaintiff's Ex. 2B, Plaintiff's Ex. 1; Defendant's Ex. 1.) The 1943 deed even included the land beneath Lena Road where it curved through what the plaintiff has identified on her map as Lot 11.[1] The owners of the lake front parcels (Lots 2-5) granted power line easements to CLP in 1948 (see, e.g., Plaintiff's Exs. 5C, 6B, 7G 8F), after which the poles and power lines were installed along and over Lena Road. (Defendant's Ex. 1.) James R. Hunt still held title to Lena Road when this servitude was created.
In 1950, James R. Hunt conveyed the northern portion of Lot 11, including Lena Road, to Muriel and Albert Stott. (Plaintiff's Ex. 13D; Defendant's Ex. 1.) The conveyance severed the connection between Hunt's remaining property, which included Lots 7, 8, 9, 10 and PQ (Plaintiff's Ex. 1), and the existing utility service. The testimony at trial is found to have proved that he intended to use at least two of the lots, 7 and 8, as building lots, it is not reasonable to assume that he intended to deprive himself of access to those power lines. The continued use of the servitude clearly was necessary to the fair enjoyment of the remaining Hunt property, (including lot 8) and access must be presumed to have been intended by Mr. Hunt and the Stotts. Leonard,148 Conn. at 11.
Thus, when the Dvoraks received their first conveyance from Mr. Hunt 1954, a way of necessity had been created from the Dvorak's property to the power lines to the northeast. The fact that Mr. Hunt showed them these lines when they were considering buying the property indicates that he himself believed that such an easement existed.
Alternatively, it is found that the Dvoraks have an easement of necessity including electric services over Lena Road to Old Colchester Road. When the Dvoraks took title to the first parcel in 1954, Mr. Hunt owned all of the land CT Page 3754 beneath Lean Road between the Dvoraks' lot and Old Colchester Road. (Plaintiff's Exs. 2B 4A.) Lena Road was already in existence (see id.), and utility service had already been installed for part of its length at the other end. (Defendants' Ex. 1; Plaintiffs' Ex. 5C, 6B, 7G, 8F.) The continued use of Lena Road to carry utilities to Lot 8 would be "`highly convenient and beneficial' for the enjoyment" of their property. D'Amato, 141 Conn. at 717.
The plaintiff's reliance, based on the language in the case of Slachter v. Olderman, 116 Conn. 156 (1933), that the easement of necessity does not extend to electric service is misplaced. The facts in this case found to have been proven by a preponderance of the evidence do establish that parts of Lena Road were, in fact, used for providing electric service in 1954. Also, in this case it is found that Mr. Hunt, the grantor, represented he was conveying the right to obtain electric service to Lot 8. These factual distinctions make Slachter inapplicable.
 THE 1957 DEED INCLUDED BY IMPLICATION THE RIGHT TO ELECTRIC SERVICE
The Dvoraks second deed in 1957 gives them "the right to travel by foot or vehicle over a right of way leading from Old Colchester Road to the herein conveyed tract." (Plaintiff's Ex. 3C.) The plaintiff has asserted that this represents an easement for access only and does not allow for the installation of utility lines. Amended Complaint, 3. While the easement language does not mention utilities, such language is not required under established principles of Connecticut law and the weight of opinions from other jurisdictions. In addition, the plaintiff's interpretation of the easement language is at odds with the factual circumstances on Lena Road.
The plaintiff's analysis also does not credit the principle that, under Connecticut law, the language of the deed is only one of several criteria for determining the nature and character of an easement. See Hagist v. Washburn,16 Conn. App. 83, 87, 546 A.2d 947 (1988). Courts will, in addition to the deed, consider "the situation of the property and surrounding circumstances in order to ascertain the intention of the parties." Id.; Mackin v. Mackin, 186 Conn. 185,189, 439 A.2d 1086 (1982); Robinson v. Clapp, 65 Conn. 365, CT Page 3755 387, 32 A. 939 (1895); Dean v. Riley, 31 Conn. App. 87,92, 623 A.2d 521 (1993); Ezikovich v. Linden, 30 Conn. App. 1,5, 618 A.2d 570 (1993).
The Dvoraks' 1957 easement is a general one. A right of way in general terms "is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant." Birdsey v. Kosienski, 140 Conn. 403, 413, 101 A.2d 274 (1953); Mackin, 186 Conn. at 189; Lichteig v. Churinetz, 9 Conn. App. 406,410, 519 A.2d 99 (1986). Whether a particular use is reasonable depends on the facts of the particular case. Hagist, 16 Conn. App. at 86. Furthermore, "[a] grant of a thing will include whatever the grantor had power to convey which is reasonably necessary to the enjoyment of the thing granted," Whittelsey v. Porter, 82 Conn. 95, 101, 72 A. 593
(1909) (emphasis added), and the character of the use of a right of way can change as the use of the dominant tenement evolves. Lichterg, 9 Conn. App. at 410; Myers v. Dunn,49 Conn. 71, 77-78 (1881). If the grant is unclear, any ambiguity is to be construed in favor of the grantee. Mackin,186 Conn. at 189.
The evidence found proven demonstrates that the Dvoraks' deed gives them the right to install utility service over Lena Road. Mr. Dvorak testified and the court found that he and his wife purchased their lot to build a retirement home as indicated above, the court finds from his testimony that he and Mrs. Dvorak discussed their plans with James R. Hunt, who approved and showed them the then-existing power lines which could be extended to service the 10. There is no dispute that in the late 1950's, Mr. Dvorak constructed a large field stone foundation. Even to the most casual observer it would appear that it was intended for a permanent home. In 1957 the facts show Mr. Hunt sold them an additional piece of land to make the lot more suitable for the permanent home which was eventually constructed.
Further, all of the other homes along Lena Road have utility service despite the fact that the vast majority of the properties, all of which save three (Lots 4, 5 11 (part)) were at one time owned by James R. Hunt, have easement language identical to the Dvoraks' property. This fact helps to show that Mr. Hunt did not intend that his grantees' access to utilities be controlled solely by the terms of their deeds. CT Page 3756 Instead, the existence of the power lines at that time is found to be evidence of a common scheme on the part of James R. Hunt to provide access to utility service for any lot owner who wanted it.
The circumstances surrounding the purchase of the Dvoraks' lot reinforces the need for a broader reading of the easement. Their property is landlocked (Plaintiff's Ex. 1), and since none of their neighbors will allow the Dvoraks access to the existing lines, Lena Road offers their only means of bringing in utility lines. Further, all of the witnesses, including the plaintiff, agree and the court finds as a fact that the Dvoraks need electrical service if they are to have the full use and enjoyment of their property.
The plaintiff testified that the Dvoraks should not bring a power line in over Lena Road in part because no one had ever done so. The simple answer to this is that no other property owner ever had to try because all were allowed to tie into the lines brought in from Laurel Point.
A broad reading of the easement is supported by court decisions both in Connecticut and other jurisdictions. In Foster Development Associates v. Talar, a decision from the Connecticut Superior Court, the court found that an easement carried with it the right to install a "roadway, drainage facilities, electric and telephone lines and underground service lines such as water, sewer and gas." Foster Development Associates v. Talar, Docket No. 512401, slip op. at 3 (J.D. New London at New London 1990) (emphasis added), reversed on other grounds, Foster Development Associates v. Talar, 26 Conn. App. 300, 304, 600 A.2d 1044 (1991). The court determined that such services were indispensable for the reasonable enjoyment of the dominant estate.
The parallels between the Foster case and the instant case are compelling. The language in the Foster easement is similar to the Dvoraks' 1957 deed, and it clear that both easements convey more than simple access. Furthermore, the property in Foster, like the parcel here, was landlocked, and the right of ways in both instances offer the only access to vital services.
Courts in other jurisdictions have also interpreted easements broadly so as to permit the full use and enjoyment CT Page 3757 of dominant properties. See Ware v. Public Ser. Co. of New Hampshire, 412 A.2d 84, 86 (Me. 1980) (right to use road includes right to erect poles); Kelly v. Schmel, 439 S.W.2d 211,213 (Mo.Ct.App. 1969) (easement includes right to erect poles and to run power line); Dowgiel v. Reid, 359 Pa. 448,59 A.2d 115, 118 (1948) (right to use road includes right to erect poles and to run electric wires); Fleming v. Napili Kai, Ltd., 50 Haw. 66, 430 P.2d 316, 318-19 (1967) (usual practice to use road easement for electricity); New York Cent. R. Co. v. Yarian, 219 Ind. 477, 485, 39 N.E.2d 604, 607 (1942) ("farm crossing" easement includes right to install power line); Diller v. St. Louis S. P.R.R., 304 Ill. 373, 136 N.E. 703,704-05 (1922) (easement allows installation of underground conduit); Davis v. Jefferson County Telephone Co., 82 W. Va. 357,95 S.E. 1042, 1044 (1918) (private right of way may be used for "modern conveniences" like electricity). Contra Crullen v. Edison Electric Illuminating Co., 254 Mass. 93,149 N.E. 665 (1925).
The Pennsylvania Supreme Court's decision in Dowgeil v. Reid is particularly instructive. There, the court determined that a property owner could place poles and string utility lines along a private right of way, even thought the specific terms of the grant appeared to limit its use to ingress and egress. 59 A.2d at 117-121. The court noted that "electricity is almost as much of a necessity as is water." Id., 117. The court also reasoned that the language of the grant entitled the defendants to run trucks over the right of way to bring fuel oil and coal to their property to provide light and heat. Consequently, logic required that they be allowed to run utility lines to accomplish the same ends with less disruption. Id. at 118. The court also noted that the placement of poles was "a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity . . . ." Id., 121.
The identical rationale applies here. If the plaintiff's interpretation of the Dvoraks' easement is correct, they do not have the right to bring in a power line. The Dvoraks could, however, arrange for a constant stream of deliveries of generator fuel and heating oil, along with whatever other supplies are required to make up for the missing utilities. CT Page 3758 A power line buried underneath the dirt surface of Lena Road presents less of a burden on the right of way and inconvenience to other property owners than the alternative.
The plaintiffs reliance on the recent case of Kuras v. Kope, 205 Conn. 332, 533 A.2d 1202 (1987) does not require a contrary ruling. That case involved a situation where the trial court made no specific finding on the Kope's claim to install underground utilities. Id., 348 n. 9. The Supreme Court in reviewing the claim dealt only with a right of way by prescription, and then only after noting that at oral argument it was made clear the Kope's had made "other arrangements" for a utility easement. Id., 349. The factual differences clearly distinguish this case.
Because the Dvoraks' 1957 deed gives them access to Lena Road, and because Lena Road is lined for part of it length with utility poles, (Defendants' Exhibit 1) which are maintained from the road itself, the plaintiff cannot prevail on a claim that the Dvoraks have no right to utility service.
In Hagist v. Washburn, the Connecticut Appellate Court was faced with the question of whether a grant of "a right-of-way by foot or vehicle, over, upon and across" a certain strip of land" was broad enough to include any reasonable use, including parking. (Internal quotation marks omitted. Hagist v. Washburn, 16 Conn. App. at 86. The court held that this language, which is essentially identical to the Dvoraks' grant, was a grant in general terms which included the right to park vehicles. Id., 86-88.
The decision on Hagist must be contrasted with the Appellate Court's later decision in Hall v. Altomari,19 Conn. App. 387, 562 A.2d 574 (1989). There the court held that easement "for all lawful purposes" was limited to ingress and egress, and the owner of the easement could not be used for parking. Id., 391. The reason for the different holdings in Hagist and Hall appears to relate to the different circumstances of the properties in the two cases. In Hall, the owner of the right of way did not need to park his cars on the right of way, and the physical relationship between the dominant and servient estates indicated that the easement was for access only. Id., 392. The right of way in Hagist, in contrast, could be used for parking without overburdening the servient estate. 16 Conn. App. at 88. CT Page 3759
Here it is found that the underground installation called for in Defendants' Exhibit 2 will not overburden the servient estate.
 THE PLAINTIFF HAS NOT PROVEN THE ELEMENTS NECESSARY FOR INJUNCTIVE RELIEF
The plaintiff, in her complaint, is seeking temporary and permanent injunctions. Generally, "`[a] party seeking injunctive relief has the burden of proving irreparable harm and lack of adequate remedy at law.'" Pet vs. Debt. of Health Services, 207 Conn. 346, 370, 542 A.2d 672 (1988); See also Hartford Elect. Light Co. v. Levitz, 173 Conn. 15, 19,376 A.2d 381 (1977). "A restrictive covenant[, however,] may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable." Hartford Elect. Light Co. v. Levitz, 173 Conn. at 22 (emphasis added). The Court remarked that:
 [w]here . . . there has been an innocent mistake or a bona fide claim of right on the part of the defendant or laches on the part of the plaintiff, or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains and it appears that damages will adequately compensate the latter, in such cases it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages. (Citations omitted.) Id., 21-22.
Injunctions are governed by General Statutes 52-471, which states:
 (a) Any judge of any court of equitable jurisdiction may, on motion, grant and enforce a writ of injunction, according to the courts of proceedings in equity, in any action for equitable relief . . . .
 (b) No injunction may be issued unless the facts stated in the application therefor are verified by CT Page 3760 the oath of the plaintiff of some competent witness.
General Statutes 52-471.
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Hartford v. American Arbitration Assn.,174 Conn. 472, 476, 391 A.2d 137 (1978). An irreparable injury is an injury that "`is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard. . . .'" Connecticut Assn. of Clinical Laboratories v. Conn. Blue Cross, Inc., 31 Conn. Sup. 110,113, 324 A.2d 288 (1973). "Whether damages are to be viewed by a court of equity as irreparable or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." (Internal quotation marks and citations omitted.) Emhart Industries, Inc. v. Amalgamated Local Union 376, U.A.W., 190 Conn. 371,402, 461 A.2d 422 (1983).
"An injunction is an extraordinary remedy which is not mandatory, but is left to the court's sound discretion even if there is a proper showing of irreparable harm." (Citation omitted.) Sonenclar v. Barlag, Superior Court, Judicial District of Stamford/Norwalk, Docket No. 129136 (March 8, 1993, Hickey, J.)
 In deciding whether [an injunction] should be granted or, if granted, whether it should be continued or dissolved, the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear that the plaintiff is without legal right.
Olcott v. Pendleton, 128 Conn. 292, 295, 22 A.2d 633 (1941).
THE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW
At trial, the plaintiff was asked how she would be harmed CT Page 3761 if the Dvoraks were allowed to bury a power line in the middle of Lena Road. She responded with apprehensions about the maintenance of the line and access during its installation, along with concerns that the roots of neighboring trees could be damaged. The plaintiff failed to produce any evidence to support these claims.
In response to the plaintiff's worries about access, Mr. Dvorak testified that the entire underground conduit for the power line could be installed by his contractor in twenty four hours. Lena Road is a dirt and gravel road (Defendants' Exs. 3A 3B), and the proposed time frame seems to the courts to be reasonable since there is no pavement to be repaired. Further, Mr. Dvorak testified that his contractor would accommodate vehicle traffic back and forth over Lena Road during the work. CLP's plan to install an underground line also calls for only one pole on Lena Road, just beyond the bridge (Defendants' Ex. 2 at 2; Defendants' Ex. 3A), and the plaintiff did not establish that that single pole would be any more of a barrier to traffic than the other poles currently on Lena Road.
The evidence shows the plaintiff's concerns about the maintenance of the power line are unfounded, as the plan in evidence shows CLP will be responsible for the line's upkeep once installation is complete. (Defendants' Ex. 2 at 2.) With respect to the plaintiff's claims about possible tree damage, she failed to produce any evidence that the underground line will put any trees or their root systems at risk.
Also, the type of damage to the trees the plaintiff fears is compensable at law pursuant to Connecticut General Statutes52-560, which authorizes money damages for the unlicensed destruction of trees, timber or shrubbery. Similarly, if the Dvoraks' power line damages Lena Road, the plaintiff may bring an action for the cost of repair. See Center Drive-In Theatre, Inc. v. Derby, 166 Conn. 460, 464, 352 A.2d 304
(1974) (property owner entitled to cost of repair to property following construction in sewer easement); Maxwell v. Central District Printing Tel. Co., 51 W. Va. 121, 41 S.E. 125, 127
(1902) (abutting landowner harmed by telephone poles in right of way has remedy at law for damages). CT Page 3762
 INJUNCTIVE RELIEF WOULD NOT BE EQUITABLE UNDER THESE CIRCUMSTANCES
The plaintiff argues that the Dvoraks may not install a power line in or along Lena Road because their easement is limited to access by foot or vehicle. This analysis does not give credit to certain uncontroverted facts. For example, all of the witnesses, including the plaintiff, testified that every home on Lena Road, with the exception of the Dvoraks', has electricity. This is despite the fact that most of the deeds to the properties, including James W. Hunt's and Beverly Conover's former lot, have the same easement rights language as the Dvoraks'. (See e.g., plaintiff's Exs. 11F 14E). The lot belonging to Chester does not have any express easement rights, yet it too is served by electricity. (Plaintiff's Ex. 9C.) (Defendants' Exhibit 1.)
Witnesses, Conover, Hunt and the plaintiff in their testimony attempted to explain this inconsistency by asserting that the electric lines to the other homes are located on private property, and the owners have given the necessary easements to CLP. Conover admitted, however, that the line to her son's home crosses Lena Road to a pole on his property, that there was no CLP easement for that lot, and that no one had ever questioned his right to have a power line along and across from Lena Road. The map prepared by CLP to show the location of lines and poles along Lena Road shows that the lines to the Chester property (Lot 6) and Beverly Conover's property (Lot 1) also cross the right of way. (Defendants' Ex. 1.) All of the plaintiff's witnesses agreed that the Dvoraks need utility service to get full use and enjoyment of their property.
"Equitable" means what is fair and just. Allen Mfg. Co. v. Administrator, 139 Conn. 402, 409 (1953).
Under the circumstances found to exist in this case, the court, in the exercise of its discretion and balancing the respected interests of the parties, cannot equitably provide the plaintiff with relief requested. Berin v. Olson,183 Conn. 337, 340 (1981).
For these three separate and independent reasons judgment is entered for the defendants on the plaintiff's complaint with costs. CT Page 3763
Leuba, J.