# CHARLESTON.

## DAVIS v JEFFERSON COUNTY TELEPHONE COMPANY.

### Submitted April 23, 1918.   Decided April 30, 1918.

1. EASEMENTS—*Way—Purpose and Mode of Use.*
   Generally where a right of way is granted or reserved without limitations upon its use it may be used for any purpose to which the land accommodated thereby may naturally and reasonably be devoted, and the grantee thereof is entitled to vary his mode of enjoying the same and from time to time avail himself of modern inventions, if by so doing he can more fully exercise and enjoy or carry out the object for which the easement was granted or reserved.   (p. 339).

2. SAME—*Way—Erection of Telephone Line.*
   And agreeably to this principle the owner of such a right of way may without imposing upon the servient estate any additional burden not reasonably within the contemplation of the parties to the grant or reservation erect or cause to be erected poles and wires along and over such way for the use of a private telephone at his residence on the dominant estate.   (p. 361).

3. SAME—*Use of Way—Injunction.*
   And an injunction will not lie against a telephone company employed by the owner of such right of way to restrain it from erecting poles and wires along and over such way to provide the owner thereof with private telephone service at his place of residence on the land to which such way is appurtenant.   (p. 361).

Appeal from Circuit Court, Jefferson County.

Suit for injunction by A. O. Davis against the Jefferson County Telephone Company.   Decree for plaintiff, and defendant appeals.

> *Reversed, injunction dissolved, and bill dismissed.*

*C. N. Campbell,* for appellant.

*John T. Porterfield,* for appellee.

MILLER, JUDGE:

The decree appealed from, pronounced on June 1, 1917, as prayed for in the bill, adjudged that the Jefferson County Telephone Company, appellant, do remove the poles and wires erected or being erected by it along and over the right of way of defendant Benjamin F. Ramey, running through the land of plaintiff, as described in said deed by metès and bounds and by reference to other deeds, granting and reserving said right of way, and also to pay the costs of the suit.

The right of way owned by Ramey was granted to him along with a tract of one hundred and four acres, by Frances W. and John Thomas Gibson, by deed dated January 24, 1884, the grant of said right of way being as follows: "And a right of way for the benefit of the land hereby conveyed from fig. 2 on the plat along the lines of Bushrod C. Washington and the lines of H. T. Miley's Braddock farm, as now used to the County road, or by some other route not less direct to Charles Town, is hereby granted to said Ramey."

Plaintiff derived title to the land owned by him by deed of October 2, 1905, from H. T. and Rachel F. Miley, wherein the grantor thereby "expressing reserves a fenced roadway or right of way along which the grantee shall maintain the fences as now laid off over the land hereby conveyed, 20 feet wide, commencing at fig. 13 on the annexed plat, running thence to fig. 1, and from fig. 1 to fig. 5 for the use and benefit of the lands adjoining and in the vicinity, now owned by Matilda Thompson, Peter and Lewis Johnson, *B. F. Ramey* and Eagan Brothers and John T. Colston. The right of way herein reserved, having been reserved in former deeds of record in the aforesaid clerk's office in Deed Book C, at page 23, and Deed Book N at page 424, deed Book 1, page 494; Deed Book 96 at page 255, Deed Book H at page 327, Deed Book M at page 409, etc.", the latter deed being one of the deeds under which said Ramey claims.

Being the owner of said right of way "for the benefit of the land" so conveyed to him, Ramey, on April 16, 1915, before the institution of this suit, entered into a contract in writing with the appellant telephone company, whereby, in consideration of $100.00, to be paid by him to said company

to assist it in building a line from Charles Town to his farm, the telephone company thereby agreed to construct said line and install a phone in his house and to give him free and unlimited party service thereon for one year from date of installation, and further, not to allow Messrs. Davis and Eagan to connect with said line unless they should agree to pay an equitable proportion of the cost of construction from the county road to their properties, and that the amount or amounts collected from them by said company should be paid over to him.

It is conceded by plaintiff that besides Ramey, Messrs. Eagan, Johnson, Thompson, and Mrs. Johnson have the right to use this private way, private in the sense that he and others who own lands lying along the same and having no other outlet, alone have the right by deed or contract to use the same generally, and without restrictions contained in their deeds, and it is evident from his contract with the telephone company that Ramey did not contemplate exclusive use of the telephone line he contracted to be built, but to limit its use to those who would do the honest thing of paying an equitable proportion of the expense thereof, and for the telephone service by the telephone company rendered them.

The first proposition relied on to sustain the decree is that the grant of the right of way to Ramey does not specifically give him the right to erect and maintain a telephone line over and along said way even for his personal and private use at his home on the land granted him, and that therefore the telephone company had not the right to so enter upon said right of way even under its contract with Ramey.

As already observed the grant of said way was "for the benefit of the land hereby conveyed", &c., an unlimited use, for whatever would benefit the land or add to the beneficial enjoyment thereof. And we observe that one of the deeds, that of March 5, 1884, from Forrest W. Brown, Trustee, to H. T. Miley, for ten acres, under which Ramey also claims, "expressly reserved" the right of way "through and over said land for all purposes to the Winchester and Charles Town road, and leading to and from Prospect Hill, the farm

of the said B. W. Herbert and to connect with the right of way now reserved and enjoyed over the land of H. T. Miley purchased of John T. Gibson, and the said B. W. Herbert, who also joins in this deed.''

The general rule is that where a right of way is granted or reserved without limit of use it may be used for any purpose to which the land accommodated thereby may naturally and reasonably be devoted. *Abbott* v. *Butler,* 59 N. H. 317; *Bakeman* v. *Talbot,* (N. Y.) 88 Am. Dec. 275, and note, page 279, with cases cited. And anciently it was decided in England that the grantee of such an easement is entitled to vary his mode of enjoying the same, and from time to time to avail himself of modern inventions; if, by so doing, he can more fully exercise and enjoy the object or carry out the purpose for which the easement was granted, applied in the case of a mine owner with right of a sufficient ''way-leave'' to his mines, and where it was held that he was entitled to lay down a railway for the purpose of carrying his minerals, though railways were unknown at the date of the grant. *Senhouse* v. *Christian,* 1 T. R. 560, 570; *Dand* v. *Kingscote,* 6 M. & W. 174; Goddard's Law of Easements, (Bennett's ed.) 351. In 9 R. C. L. p. 787, it is said, ''an unlimited conveyance of an easement is in law a grant of unlimited reasonable use'', citing many decisions. And our case of *Uhl* v. *Ohio River R. Co.,* 47 W. Va. 59, is very pertinent, holding that notwithstanding the grant by Uhl to the railroad company of a right of way without reservation, the law would imply a way of necessity across the same, by which he might pipe natural gas to his residence for use therein, the pipes to be laid and constructed so as not to interfere in any wise with the railroad company's proper use of its right of way.

If then those living in a rural district with only such unlimited private ways as that involved here are to enjoy any of the modern conveniences, such as electric light, natural gas, telephones, and the like, they must of necessity rely upon such ways by which to obtain them. To deny them such right would be to stop to some extent the wheels of progress and invention, and finally make residence in the country more and more undesirable and less endurable. Where there has been

such an unlimited and unrestricted grant of a way we think it may be reasonably implied that the parties intended an unlimited reasonable use thereof, as distinguished from an unreasonable and improper one. It is fully shown in the evidence in this case that the poles and wires are so set and hung as to constitute no invasion of plaintiff's right or any obstruction to the enjoyment by him of the residue of his land.

The next proposition relied on to sustain the decree is that the poles and wires set and strung along said right of way constitute an additional burden upon the servient estate of plaintiff, and deprive him of his property without due process of law and a just compensation therefor. We reply, not so, if the right to such use is reasonably implied in the grant. And with respect to the supposed additional servitude created by the use of the way for such poles and wires, we can see no distinction in principle between the grant of a way for a public road and one for a private one, certainly there is nothing in the character of the burden to distinguish them. It is said that holes were dug in the ground and the poles set therein, thereby invading plaintiff's very right to the soil; but is this invasion any greater in the one case than in the other? We can not so hold. In *Maxwell* v. *Cent. Dist. & Pr. Tel. Co.*, 51 W. Va. 121, it was decided that the right given to the defendant company by a municipality to occupy its streets with telephone poles and wires did not constitute an additional servitude on the lands of an abutting owner so as to entitle him to enjoin the use of the streets therefor.

It follows, therefore, that if the defendant company had the right to use the way for poles and wires for his private use, he had the right to employ appellant, as he did by the contract of April 16, 1915, to set the poles and string the wires over and along said way so as to furnish him telephone service as provided in said contract. In so holding we do not imply the opinion that the telephone company could serve the public generally over such private line. Such a service would likely constitute an additional burden not warranted by the grant; but we are not called upon and do not decide that question. *Carpenter* v. *Capital Electric Co.*, (Ill.) 69

Am. St. Rep. 286; *Chesapeake and Potomac Tel. Co. v. Mackenzie,* (Md.) 28 Am. St. Rep. 219, note, 235.

Our conclusion, therefore, is to reverse the decree, dissolve the injunction, and dismiss the bill.

*Reversed, injunction dissolved, and bill dismissed.*