Dowgiel *v.* Reid et al., Appellants.

Argued April 13, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph D. Calhoun*, for appellants.

*William A. Burns*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 24, 1948:

This is an appeal from a decree enjoining defendants from entering on plaintiff's premises "for the purpose of digging holes thereon or for erecting poles thereon or for hanging wires thereover".

Plaintiff is the owner of property situate on Ashland Avenue, Township of Darby, Delaware County, which contains a "private road or cartway" twenty feet wide established by partition proceedings in 1835 for the benefit of defendants' real estate. Defendants' farm adjoins plaintiff's property to the rear and side and the private lane is the only means of access thereto. Plaintiff's bill alleges that the defendants contracted with codefendant William N. Raphial for the digging of certain holes on the private lane to erect poles and to string copper wire from the lines of The Philadelphia Electric Company on Ashland Avenue to defendants' property for the purpose of providing the farm with electrical facilities; that holes are being dug on plaintiff's property despite her warning to defendants and their employees to cease work and remove themselves from the premises. Plaintiff avers that the continuing trespass will cause immediate and irreparable loss and damage, and that the right of way created by the partition proceedings is limited to ingress and egress of passenger and vehicular traffic and does not include ingress and egress of electricity.

Defendants contend that the easement of the roadway was created without limitation or restriction and that a reasonable use of it would permit the erection of poles along the way and the stringing of wires on those poles for the transmission of electric current to the premises of the defendants, James Reid and Esther Reid. The court granted a preliminary injunction which was later made permanent.

The partition proceedings of 1835 herein referred to divided a tract of ground containing one hundred fifty

acres, claimed by five persons, into five parts. Each claimant was awarded one-fifth of the total acreage. The tract now owned by defendants was tract No. 4 and that owned by plaintiff was tract No. 5. The following recitals appear in the awards of tracts 3, 4, and 5: *No. 3:* "Together with the improvements right liberty and appurtenance thereto belonging or in any wise appertaining. And together with the right and privilege of a private road or cartway of twenty feet in width for the use of the owners of this lot and lot No. 4 their heirs and assigns to begin with the southeasterly corner of lot No. 4 thence along the side of said road and by lands of William Harris and Mary Boon forty-six perches and six tenths to a stake in lot No. 5 thence along the side of said lot No. 5 and by land of said Mary Boon sixty-three perches and a half into the road leading from the Providence Road to Chester." *No. 4:* "Together also with the right and privilege of the private road or cartway above described and reserved for the benefit of their lot and lot No. 4." *No. 5:* "subject to the right and privilege of the private road or cartway hereinbefore described and reserved for the use of Lots No. 3 and 4 their heirs and assigns."

The Chancellor found that after the partition proceedings all the owners of the property in question, considered the private road or cartway as being in existence and commenced the use of the same which was continued by their successors in title until the present time; that the plaintiff and her predecessors in title recognized the partition proceedings as valid and their present title is based upon the validity of the proceedings. He concluded that the "use of the said right of way is limited to ingress, egress and regress by foot, horse or wheeled vehicle" and that the "defendants Reid have no right to obstruct the lane by the erection of electric poles". He further decreed that the "defendant, the Philadelphia Electric Company, has no right to connect wires for the

transportation of electricity along the lane to their wires along Ashland Avenue".

The Chancellor said: "When the writer of this opinion first considered this matter he was of the view that the law should enable the dominant tenement to use the right of way for all services reasonably necessary for the enjoyment of his property. Of course, such use should be subject to the condition that it would not interfere with the servient tenement's reasonable enjoyment of his property. Upon making further investigation, however, we learned that there is a split of authority in the country on the question of whether an easement of a way does include the right to lay a pipe for the transportation of gas or oil or to string electric light wires. [Citing cases] . . . However, our Supreme Court, in Allen v. Scheib, 257 Pa. 6, held that the right to lay or authorize another to lay a line of gas pipe depends upon the nature of the ownership. 'If an easement, then she can use it only for the purpose for which it was established or dedicated, and cannot lay a pipe line therein: U. S. Pipe Lines Co. & Breckenridge v. Del., Lack. & Western R. R. Co., 62 N. J. Law 254; 14 Cyc. 1207, Notes 98. As an easement it cannot lawfully be used for a purpose different from that for which it was dedicated; Kirkman v. Sharp, 1 Wharton 323; Mershon v. Fidelity Ins. Trust & Safe Deposit Co., 208 Pa. 292; 14 Cyc. 1215.' "

The question is: Does the right to use a road to and from one's habitation include the right to erect poles along that road on which may be strung wires for the transmission of electricity to and from that habitation? It is a rule in the interpretation of contracts that a contract "should be construed in the light of the circumstances surrounding them [the parties] at the time it is made, it being the duty of the court to place itself as nearly as may be in the situation of the parties at the time so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and the

correct application of the language of the contract. For this purpose in construing a contract the court will consider the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract". 13 Corpus Juris 542, 543, sec. 514 (citing numerous cases). In *Myers' Estate*, 238 Pa. 195, 86 A. 89, it was held (quoting from the syllabus) that "Every contract should be construed so as to give effect to the intention of the parties. In ascertaining that intention, it is proper to consider all the negotiations leading to the formation of the contract, its subject matter, *and the end to be accomplished.*" (Italics supplied.)

Obviously the end to be accomplished by the awards in 1835 was that the owner of the lot or lots to which the right of the public road was appurtenant *should not live in isolation but should have such access to the outside world as was necessary to his reasonable and natural enjoyment of the ownership of the premises and of any building erected thereon.* In 1835 when the easement was created the only access the owner of the lots needed was a *road* over which *pedestrians, horses,* and *vehicles* could travel. At that time telephones, electric lights and electric washing machines and electric cooking stoves, electric heaters, electric radios and electric vacuum cleaners were totally unknown. Today in almost every American home in localities such as the one in which this litigation has its situs electricity is almost as much of a necessity as is water. Even under the narrow interpretation contended for by plaintiff, Mr. and Mrs. Reid could keep the road cluttered with vehicles (ox-driven, if they so desired) bringing them kerosene oil for oil lamps and fuel oil for an oil heating apparatus and electric storage batteries for the purpose of supplying them with electric light and power. No matter how large their

habitation might be or how much oil they might need or how many storage batteries they might require, their right to bring these supplies over this road in some kind of motor-driven or animal-pulled vehicles could not be questioned.

Since the defendants have the right thus to bring such and similar supplies in vehicles over this private road for the purpose of making their habitation livable according to present day standards, is it not unreasonable to contend that if they prefer to use electricity instead of oil and coal for the purpose of illuminating and heating their home, they cannot use the private road for the purpose of erecting sufficient poles along the side of that road to carry electric wires from the main electric line to their home, particularly in view of the fact that such poles will in no substantial degree interfere with the owner of the servient estate's use of her property? We answer this question "Yes", and in so answering we are in accord with the weight of authority.

19 Corpus Juris, pages 975, 976, sec. 219, makes this statement: "Where a way is granted or reserved without any limitation as to its use, it will not necessarily be confined to the purposes for which the land was used at the time the way was created, but may be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted. It may be used for all the ordinary purposes of a way, subject to the general rule that the use must be reasonable; for it is well settled that where a right of way is granted in general terms no right in, or power over, the land but what is necessary to its reasonable enjoyment is conferred. The grantee is entitled to vary his mode of enjoying the same, and from time to time to avail himself of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted."

In *New York Central Railroad Co. v. Henry O. Yarian*, 39 N. E. 2d 604, 139 A. L. R. 455, it was held that the right to the maintenance of a farm crossing by a railroad, the right of way of which divides a farm and cuts off the buildings thereon from access to the highway, under a provision in the deed to the railroad requiring it "to permit and maintain two farm crossings," *includes the right to install a conduit underneath the right of way to carry electricity from an electric line on the highway to the buildings* to be used for farm and domestic purposes, provided that such conduit is constructed in such a way as not to make it dangerous to operate the railroad over the crossing. The Supreme Court of Indiana stated: ". . . The reservation was for a 'farm crossing,' and it must be concluded that it was intended to afford a means of access to the divided portions of the farm and to the adjacent and only available highway. It is true that at the time the deed was made the crossing was only used as a pedestrian crossing or for animals or animal-drawn vehicles, but there is no express limitation of the use to such traffic. It is sometimes said that reservations of easements are strictly limited to the purposes in the minds of the parties, but we believe a proper application of the rule puts the limitation not upon the character of traffic upon a reserved way, but *upon the purpose to be served by the traffic*. Without the reservation, public policy would have implied an intention that the dominant estate should have a way of passage over the servient estate *because such a way is necessary to the full and fair enjoyment of the dominant estate,* and it is against public policy that estates be cut off from use and profitable enjoyment. . . . In Jones on Easements, § 323, p. 263, it is said: 'The extent of a way of necessity is a way such as is required for the complete and beneficial use of the land to which such way is impliedly attached.' . . . it has sometimes been said that the right is limited to such a way as was necessary at the time. But we

think the limitation is upon the use of the dominant estate served, in this instance a farm home, and that *the way may be used in any manner that is reasonably required for the complete and beneficial use of the dominant estate as a farm or home."* (Italics supplied.)

In *Swensen v. Marino*, 29 N. E. 2d 15, 130 A. L. R. 763, the Supreme Judicial Court of Massachusetts said: ". . . when a right of way arises by grant and not by prescription and is not limited by the terms of the grant, 'it is available for the reasonable uses to which the dominant estate may be devoted.' Parsons v. New York, New Haven & Hartford Railroad Co., 216 Mass. 269, 273, 103 N. E. 693; Anzalone v. Metropolitan District Commission, 257 Mass. 32, 36, 153 N. E. 325, 47 A. L. R. 897. . . . We should be very slow to hold that even ancient rights of way not expressly restricted as to the type of vehicle (Clarkin v. Duggan, 292 Mass. 263, 198 N. E. 170), could not be employed at all for the means of transportation in common use by a succeeding generation. See Crosier v. Shack, 213 Mass. 253, 100 N. E. 607, L. R. A. 1918A 260."

It was held in *Abbott v. Butler*, 59 N. H. 317, that an easement of a right of way given without limit as to its use might be used for any purpose for which the land benefited thereby might reasonably be devoted, the court saying: "The reservation to the defendant was of a right of way across the plaintiff's premises. The use of the way was not limited, unless the fact that it terminated at one extremity at the land of the defendant's father was a limit of the use to the beneficial enjoyment of that land. The reservation of the way contained no expression limiting the use to carrying the annual crops from the land, or to argicultural purposes merely. It was a reservation of a right of way in general terms, and the construction of the grant must be broad enough to include any reasonable use to which the land might be devoted."

The court in *Sakansky v. Wein*, 86 N. H. 337, 169 A. 1, said: "The argument advanced that what is reasonable

must be considered in the light of the situation as it was at the time the way was granted in 1849 is without merit. What is or is not a reasonable use of a way does not become crystallized at any particular moment of time. Changing needs of either owner may operate to make unreasonable a use of the way previously reasonable, or to make reasonable a use previously unreasonable. There is an element of time as well as of space in this question of reasonableness. In the absence of contract on the subject, the owner of the dominant estate is not limited in his use of the way to such vehicles only as were known at the time the way was created, but he may use the way for any vehicle which his reasonable needs may require in the development of his estate."

In *Diller v. St. Louis, S. & P. R. Co.*, 304 Ill. 373, 136 N. E. 703, it was said: "In determining the question of reasonableness this court cannot be unmindful of modern methods and means of performing work which heretofore it was necessary to perform in other ways. A reservation of a right of way entitles the one who has the right to adapt it to the improvements of the age. . . . By 'necessary use' is meant such use as is reasonably necessary to the full enjoyment of plaintiff's premises. There is nothing in the deed in this case which limits the use of the ways. Any use reasonably necessary may be made, and the use may vary from time to time."

It was held in *Dand v. Kingscote*, 6 Mees & W. 174, 151 Eng. Reprint, 370, that "way leave and stay leave" for the carriage of coal, reserved in 1630, included the right to lay down a railway of a kind not in use at the time of the reservation. It was stated in *Newcomen v. Coulson*, L. R. 5 Ch. Div. (Eng.) 133: "the decision in Dand v. Kingscote (1) was, that a reservation of a right of way from and to the colliery entitled the man who had the right to adapt it to the improvements of the age, and the improvements of the age required he should have a right to use a locomotive over the land."

In *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855. it was held that one having a right of way over land of another may substitute a bridge for a ford as a means of crossing a creek, where the method of such crossing had not been designated in the original deed or grant, provided the bridge is constructed in such a way as to cause the least practical damage to the owner of the servient tenement and provided ample room is left for the natural flow of water, even in time of flood, unless the flood is of unusual extent. This Court said "A grant is to be construed in favor of the grantee and includes whatever is reasonably necessary to an enjoyment of the thing granted. 'The grantee of a defined way has the right to do whatsoever is necessary to make it passable or usable for the purposes named in the grant': [citing cases] The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, and in so doing may construct a bridge over a ravine or creek if it be done in such way as to cause the least practicable damage to the owner of the servient tenement . . ."

In *Library Co. v. Fidelity Trust Co.,* 235 Pa. 5, 83 A. 592, this Court said: "There is nothing in the agreement which defines what kind of a passageway shall be maintained, and we can see no good reason why the appellee may not, if it chooses, construct a pavement as part of the passageway and on a level with it, so that it may serve as a convenience to pedestrians as well as for cartway purposes."

In *Davis v. Jefferson County Telephone Co.,* (West Virginia) 95 S. E. 1042 (1918), a court of equity had ordered a telephone company to remove the poles and wires erected or being erected by it along and over the right of way of the defendant, running through the land of plaintiff. The right of way owned by the defendant was granted to him along with a tract of one hundred and four acres in 1884. It was described as "a right of way for the benefit of the land hereby conveyed"

along certain lines. The Supreme Court of Appeals of West Virginia said: "The first proposition relied on to sustain the decree is that the grant of the right of way to Ramey does not specifically give him the right to erect and maintain a telephone line over and along said way even for his personal and private use at his home on the land granted him, and that therefore the telephone company had not the right to so enter upon said right of way even under its contract with Ramey. . . . The general rule is that where a right of way is granted or reserved without limit of use it may be used for any purpose to which the land accommodated thereby may naturally and reasonably be devoted. Abbott v. Butler, 59 N. H. 317; Bakeman v. Talbot, 31 N. Y. 366, 88 Am. Dec. 275, and note, page 279, with cases cited. And anciently it was decided in England that the grantee of such an easement is entitled to vary his mode of enjoying the same, and from time to time to avail himself of modern inventions; if, by so doing, he can more fully exercise and enjoy the object or carry out the purpose for which the easement was granted, applied in the case of a mine owner with right of a sufficient 'way-leave' to his mines, and where it was held that he was entitled to lay down a railway for the purpose of carrying his minerals, though railways were unknown at the date of the grant. [Citing cases] In 9 R. C. L. p. 787, it is said, 'An unlimited conveyance of an easement is in law a grant of unlimited reasonable use,' citing many decisions. And our case of Uhl v. Ohio River R. Co., 47 W. Va. 59, 34 S. E. 934, is very pertinent, holding that notwithstanding the grant by Uhl to the railroad company of a right of way without reservation, the law would imply a way of necessity across the same, by which he might pipe natural gas to his residence for use therein, the pipes to be laid and constructed so as not to interfere in any wise with the railroad company's proper use of its right of way.

"If then those living in a rural district with only such unlimited private ways as that involved here are to enjoy any of the modern conveniences, such as electric light, natural gas, telephones, and the like, they must of necessity rely upon such ways by which to obtain them. To deny them such right would be to stop to some extent the wheels of progress, and invention, and finally make residence in the country more and more undesirable and less endurable. Where there has been such an unlimited and unrestricted grant of a way we think it may be reasonably implied that the parties intended an unlimited reasonable use thereof, as distinguished from an unreasonable and improper one. It is fully shown in the evidence in this case that the poles and wires are so set and hung as to constitute no invasion of plaintiff's right or any obstruction to the enjoyment by him of the residue of his land."

It was contended in support of the decree that the poles and wires set and strung along the right of way constituted an additional burden upon the servient estate of plaintiff and deprived him of his property without due process of law. The West Virginia Supreme Court of Appeals said: "We reply, not so, if the right to such use is reasonably implied in the grant. And with respect to the supposed additional servitude created by the use of the way for such poles and wires, we can see no distinction in principle between the grant of a way for a public road and one for a private one, certainly there is nothing in the character of the burden to distinguish them. . . . In Maxwell v. Cent. Dist. & Pr. Tel. Co., 51 W. Va. 121, 41 S. E. 125, it was decided that the right given to the defendant company by a municipality to occupy its streets with telephone poles and wires did not constitute an additional servitude on the lands of an abutting owner so as to entitle him to enjoin the use of the streets therefor."

The decree was reversed and the injunction dissolved.

To erect poles along this private road and to string on those poles wires for the transmission of electricity from the home of defendants, James and Esther Reid, to the power line on the main highway, is a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity, the same being obtainable only by the means above stated. Such a use is in this modern era one of the ordinary purposes of such a way; on this record this use appears to be a reasonable one and it further appears that it does not constitute an additional burden on the servient estate except possibly one of a trifling character.

If no water could be obtained for the home of James and Esther Reid except by laying a pipe line in this private road, from the home to the main water line, no one could successfully contend that the laying of such a pipe line for the purpose stated was not a reasonable use of the road. The fact that the pipe line would not be visible while the poles and electric wires are visible is *not* a sufficient distinction to invalidate the analogy. Poles and wires along the highways are concomitants of this mechanized age and the sensitivity of those who find the sight of them offensive is somewhat beyond the pale of a court of equity's protection. Civilization has its burdens as well as its benefits and those who enjoy its benefits must philosophically bear its burdens.

To the extent that the decision in *Allen v. Scheib et al.*, 257 Pa. 6, 101 A. 102, is in conflict with this opinion and decision it is overruled.

The decree of the lower court is reversed; the injunction is vacated. Each side will pay its own costs.

Mr. Justice HORACE STERN dissents.