******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM FRANCINI *v.* GOODSPEED
AIRPORT, LLC, ET AL.
(SC 19705)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Robinson, D'Auria and Espinosa, Js.

*Syllabus*

The plaintiff landowner, who enjoyed a deeded right-of-way over certain
real property owned by the defendant, sought, inter alia, a judgment
declaring the existence of an easement by necessity for the purpose of
underground commercial utilities. The trial court rendered summary
judgment in favor of the defendant, concluding that Connecticut law
does not permit the creation of easements by necessity for commercial
utilities. The plaintiff appealed to the Appellate Court, which determined
that the case law of this state and other jurisdictions, as well as treatises,
supported the creation of easements by necessity for commercial utilities
and, accordingly, reversed the trial court's judgment. On the granting
of certification, the defendant appealed to this court. *Held* that the
Appellate Court properly concluded that the trial court should not have
rendered summary judgment in favor of the defendant, as a genuine
issue of material fact existed as to whether an easement by necessity
over the defendant's property should be granted for the installation of
commercial utilities: consistent with the broad principle that easements
by necessity require only a reasonable necessity, the public policy
favoring the effective use of land, the implied conveyance of rights
necessary to reasonable enjoyment of property, and the law of other
jurisdictions, this court concluded that public policy favors recognition
of easements by necessity for utilities over a preexisting deeded right-
of-way; furthermore, when a right-of-way already exists, an expansion
of that easement for commercial utilities will be allowed as long as it
is reasonably necessary for the beneficial enjoyment of the dominant
estate and does not unreasonably impair the beneficial enjoyment of
the servient estate, and trial courts should balance the intent of the
parties regarding use at the time of severance, the relative enjoyment
of the properties, and the burdens imposed by the easement in order
to determine the overall costs and benefits to the parties.

Argued September 18, 2017—officially released January 2, 2018

*Procedural History*

Action for, inter alia, a judgment declaring an ease-
ment by necessity over certain real property owned by
the named defendant, brought to the Superior Court in
the judicial district of Middlesex, where the plaintiff
withdrew certain counts of the amended complaint;
thereafter, the court, *Aurigemma, J.*, granted the
named defendant's motion for summary judgment and
rendered judgment thereon; subsequently, the plaintiff
withdrew the remaining count of the amended com-
plaint and appealed to the Appellate Court, *DiPentima*,
*C. J.*, and *Lavine* and *Lavery, Js.*, which reversed the
trial court's judgment and remanded the case with direc-
tion to deny the defendant's motion for summary judg-
ment and for further proceedings, and the named
defendant, on the granting of certification, appealed to
this court. *Affirmed.*

*Mary Mintel Miller*, with whom was *John R. Bashaw*,
for the appellant (named defendant).

*William Francini*, self-represented, the appellee

(plaintiff).

*Opinion*

EVELEIGH, J. In this certified appeal, we are tasked with determining whether easements by necessity can be granted for commercial utilities. More specifically, we consider whether an easement that affords ingress and egress to an abutting property can later be expanded, by necessity, for utilities. The plaintiff, William Francini, commenced the present action seeking, inter alia, a judgment declaring that he is entitled to an easement by necessity for underground utility lines across the property of the named defendant, Goodspeed Airport, LLC, and an injunction permitting use of the easement.[1] The defendant appeals from the judgment of the Appellate Court, which reversed trial court's award of summary judgment in favor of the defendant. We affirm the judgment of the Appellate Court.

The Appellate Court's opinion and the record contain the following facts and procedural history. "The following facts, as alleged by the plaintiff and admitted by the defendant, are not in dispute for the purpose of this motion for summary judgment. The plaintiff owns a parcel of land in East Haddam. The parcel's only access to a public highway is over an abutting property, owned by the defendant. [Both properties were originally part of a single parcel of land, subsequently divided into many parcels for residential use and conveyed through a series of transfers over the years to various individuals or entities.] The defendant took title to its property by warranty deed in 1999, subject to a right-of-way easement now enjoyed by the plaintiff as well as several of the plaintiff's neighbors, landowners who also own land abutting the defendant's property. The 1999 warranty deed expressly described the right-of-way, in general terms and without limitations on its use, by providing for '[s]uch rights as others may have to a [right-of-way] over a passway or driveway as set forth in a deed from [the property's prior owner], dated August 16, 1963 and recorded in . . . the East Haddam [l]and [r]ecords . . . .'[2]

"In 2001, the defendant entered into an agreement with several of the plaintiff's neighbors, who also share the plaintiff's right-of-way across the defendant's property, to allow the neighbors to improve the right-of-way by installing and maintaining a utility distribution system under the existing right-of-way easement. As a result, a commercial utility system was constructed under the existing right-of-way and now provides electricity to the plaintiff's neighbors. In exchange for this utility easement, each of the plaintiff's neighbors paid the defendant $7500. The plaintiff offered to pay the defendant the same $7500 that his neighbors had paid for use of the utility easement, but the defendant requested that the plaintiff not only pay the $7500, but also grant it the power to move the location of the easement at will. The plaintiff declined the additional

terms and the two parties never reached an agreement. Without an agreement, the plaintiff does not enjoy an easement for commercial utilities and his property is currently landlocked from access to commercial electricity. Currently, the plaintiff's house is powered by a generator, but the generator is alleged to be insufficient to run and maintain the basic requirements of the plaintiff's house such as powering security devices, turning on automatically in the event of a flood, and running a refrigerator to preserve perishable food without constant operation of the generator." (Footnote added.) *Francini* v. *Goodspeed Airport, LLC*, 164 Conn. App. 279, 281–82, 134 A.3d 1278 (2016).

In 2012, the plaintiff filed an amended complaint seeking a judgment declaring the existence of an easement by necessity for commercial utilities across the defendant's property and seeking an injunction requiring the defendant to permit use of that easement.[3] The defendant, in response, filed a motion for summary judgment claiming that, although Connecticut law permits easements by necessity for ingress and egress to landlocked parcels, it does not permit similar easements for commercial utilities. The trial court granted the defendant's motion, and the plaintiff appealed to the Appellate Court. The Appellate Court determined that, although there was no precedent in this state favoring the grant of an easement by necessity for commercial utilities, the prior language of this court regarding easements by necessity, multiple treatises on the subject, and precedent from other jurisdictions throughout the country support expanding the scope of easements by necessity to include commercial utilities. Id., 284–93. The Appellate Court remanded the case to the trial court to deny the motion for summary judgment and for further proceedings. Id., 296. In reaching this conclusion, the Appellate Court did not specify the appropriate test to be used by the trial court to determine whether an easement by necessity existed. Instead, the Appellate Court concluded that easements by necessity for utilities are permissible, generally, and that "the facts as alleged by the plaintiff, viewed in the light most favorable to the plaintiff and undeveloped by any evidence, prevent the defendant from prevailing on its motion [for summary judgment]." Id. This appeal followed.[4]

We begin with the standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine

issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *St. Pierre* v. *Plainfield*, 326 Conn. 420, 426, 165 A.3d 148 (2017). Although the scope of an easement is normally a question of fact; *Deane* v. *Kahn*, 317 Conn. 157, 166, 116 A.3d 259 (2015); the issue raised in the present case is whether an easement by necessity can be granted for commercial utilities, a question of law over which our review is plenary. See id., 175.

In the context of easements by necessity for access to a landlocked parcel, this court's precedent directs us to engage in a three-pronged analysis, considering (1) the cost of obtaining enjoyment from, or access to, the property by means of the easement in relation to the cost of other substitutes, (2) the intent of the parties concerning the use of the property at the time of severance, and (3) the beneficial enjoyment the parties can obtain from their respective properties with and without the easement. See id., 181–82; *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 398–99, 324 A.2d 247 (1973); *Marshall* v. *Martin*, 107 Conn. 32, 38, 139 A. 348 (1927); *Robinson* v. *Clapp*, 65 Conn. 365, 385, 32 A. 939 (1895); *Collins* v. *Prentice*, 15 Conn. 39, 44 (1842).

In the present case, however, the plaintiff is not seeking an easement by necessity for physical access for the purpose of ingress and egress to his property, but an easement by necessity for utility access along that preexisting right-of-way. Although this court has never directly addressed this question, it has recognized the broader principle that an easement by necessity may arise from a reasonable, but not strict, necessity. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 399.

Consistent with this broad principle, scholarly treatises generally agree that the scope of an easement by necessity includes those uses that are for the beneficial enjoyment of the property. See J. Bruce & J. Ely, Law of Easements and Licenses in Land (2017) § 8:7, p. 8-32; R. Powell, Real Property (M. Wolf ed., 2017) §§ 34.07 and 34.13, pp. 34-45 and 34-149; G. Thompson, Real Property (J. Grimes ed., 1980) § 336, pp. 419–23; 25 Am. Jur. 2d 688, Easements and Licenses § 18 (2014).[5]

This view is consistent with the Restatement (Third) of Property, Servitudes, which provides: "A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights *necessary to reasonable enjoyment of the land* implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance

clearly indicate that the parties intended to deprive the property of those rights." (Emphasis added.) 1 Restatement (Third) Property, Servitudes § 2.15, p. 202 (2000). The commentary to this section discusses the policy rationales for easements by necessity, specifically, promoting the effective use of land and giving effect to the presumed intent of the parties. Id., comment (a), pp. 203–204. The commentary further observes that the rights necessary for the enjoyment of property are normally related to access to the property; however, it further provides: "a servitude will be implied to do whatever is reasonably necessary for the enjoyment of property, if the conveyance would otherwise eliminate the property owner's right to do those things." Id., comment (b), pp. 204–205. The commentary also specifically addresses the scope of an easement of necessity beyond just access to property, providing: "[U]ntil recently, access for foot and vehicular traffic tended to be the only rights regarded as necessary for the enjoyment of surface possessory estates. However, the increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justif[ies] the conclusion that implied servitudes by necessity will be recognized for those purposes. Whether access for other utilities and services has also become necessary to reasonable enjoyment of property depends on the nature and location of the property and normal land uses in the community." Id., comment (d), p. 208.

Support for this view is also reflected in case law of other jurisdictions that have recognized easements by necessity for utilities, especially where a preexisting right-of-way existed. The earliest case involving a utility easement by necessity was *Davis* v. *Jefferson County Telephone Co.*, 82 W. Va. 357, 95 S.E. 1042 (1918). In *Davis*, several property owners utilized a shared right-of-way, and one of these owners wished to construct telephone lines along that easement for his own use. Id., 358. The plaintiff in that case, the property owner of the servient estate, challenged the construction of the telephone lines, claiming that the initial grant of the right-of-way did not also give that owner the right to construct utility lines. Id. The West Virginia Supreme Court of Appeals examined the necessity of having electricity as follows: "If then those living in a rural district with only such unlimited private ways as that involved here are to enjoy any of the modern conveniences, such as electric light, natural gas, telephones, and the like, they must of necessity rely upon such ways by which to obtain them. To deny them such right would be to stop to some extent the wheels of progress, and invention, and finally make residence in the country more and more undesirable and less endurable." Id., 360. Insofar as the plaintiff in *Davis* also challenged the additional burden on the original right-of-way due to digging and installing telephone poles, the court

observed that there was no additional burden on the land so long as it was reasonable to do so and in accordance with private, rather than public, use. Id., 360–61.

The Court of Appeals of Maryland has also determined that an easement by necessity may permit modifications and repairs to property in order to conform to modern conditions. Specifically, in *Tong* v. *Feldman*, 152 Md. 398, 136 A. 822 (1927), the plaintiff had obtained a lease for a portion of a building in Baltimore that he attempted to adapt into a restaurant, but needed to modify gas lines that passed through another tenant's property. Although the court observed that easements by necessity "are more familiarly met [within] rights of way . . . they are not confined to such rights." Id., 402. The court looked to the purpose for which the original right or easement was established and held: "Whenever it has arisen from necessity it would seem to be [coextensive] with the reasonable needs, present and future, of the dominant estate for such a right or easement, and to vary with the necessity, [insofar] as may be consistent with the full reasonable enjoyment of the servient tenement." Id., 405. The only restriction upon the plaintiff's easement was that any modifications cannot "materially interfere with [the defendant's] reasonable enjoyment of the cellar, in which they are located." Id.

*Davis* and *Tong* provided the background for many subsequent cases from other jurisdictions recognizing the necessity of utility access. The Indiana Supreme Court reached a similar conclusion in *New York Central Railroad Co.* v. *Yarian*, 219 Ind. 477, 485, 39 N.E.2d 604 (1942), stating: "The same public policy which requires that a way of necessity will be implied where none is expressly reserved, requires that an express reservation of a way shall be construed to grant rights sufficient for the full reasonable enjoyment of the estate if the language of the reservation will permit such a construction. Electricity is largely used for power and light and for the operation of refrigerating and labor-saving machines on farms and in farm homes, and that its use contributes to the full and profitable enjoyment of a farm can hardly be doubted." Likewise, in *Dowgiel* v. *Reid*, 359 Pa. 448, 460, 59 A.2d 115 (1948), the Supreme Court of Pennsylvania also permitted an easement by necessity for utilities along an express right-of-way. The court observed that erecting poles and wires is "something which is essential to the livableness of the home, to wit, electricity . . . . Such a use is in this modern era one of the ordinary purposes of such a way . . . . Poles and wires along the highways are concomitants of this mechanized age and the sensitivity of those who find the sight of them offensive is somewhat beyond the pale of a court of equity's protection. Civilization has its burdens as well as its benefits and those who enjoy its benefits must philosophically bear its burdens." Id. The Supreme Judicial Court of Maine also

granted an easement by necessity for utilities in *Morrell* v. *Rice*, 622 A.2d 1156, 1160 (Me. 1993), explaining that "[a]n easement created by necessity can include not only the right of entry and egress, but also the right to make use of the easement for installation of utilities, essential for most uses to which property may reasonably be put in these times." Accord *Fleming* v. *Napili Kai, Ltd.*, 50 Haw. 66, 70, 430 P.2d 316 (1967); *Brown* v. *Miller*, 140 Idaho 439, 443, 95 P.3d 57 (2004); *Gacki* v. *Bartels*, 369 Ill. App. 3d 284, 293, 859 N.E.2d 1178 (2006); *Cline* v. *Richardson*, 526 N.W.2d 166, 169 (Iowa App. 1994); *Stroda* v. *Joice Holdings*, 288 Kan. 718, 728–29, 207 P.3d 223 (2009); *Ashby* v. *Maechling*, 356 Mont. 68, 78, 229 P.3d 1210 (2010); *Firstenberg* v. *Monribot*, 350 P.3d 1205, 1218 (N.M. App.), cert. denied, 367 P.3d 850 (N.M. 2015); *Regan* v. *Pomerleau*, 197 Vt. 449, 465, 107 A.3d 327 (2014); *Atkinson* v. *Mentzel*, 211 Wis. 2d 628, 639, 566 N.W.2d 158 (App. 1997).[6]

Several state legislatures have weighed in on this issue as well. In 1973, the Massachusetts legislature enacted a law granting owners of express easements for ingress and egress an additional easement for utilities, provided that the utilities do not unreasonably obstruct the existing easement. See Mass. Ann. Laws c. 187, § 5 (LexisNexis 2011); 1973 Mass. Acts 930. The Massachusetts Court of Appeals extended this statute to include access easements granted by implication and necessity, but not to those easements granted by prescription. *Adams* v. *Planning Board*, 64 Mass. App. 383, 392, 833 N.E.2d 637 (2005). Florida has also enacted legislation to address easements by necessity and the use of the easement for utilities. See Fla. Stat. Ann. § 704.01 (West 2013). The first subdivision in that statute codifies the common-law right to easements by necessity. Fla. Stat. Ann. § 704.01 (1) (West 2013). The second subdivision expands the scope of easements by necessity to include uses for "cable television service, and any utility service, including, but not limited to, water, wastewater, reclaimed water, natural gas, electricity, and telephone service . . . ." Fla. Stat. Ann. § 704.01 (2) (West 2013).

As the foregoing summary demonstrates, the majority of jurisdictions that have considered the issue have recognized that easements by necessity for utilities may arise when there is a preexisting right-of-way. The rationale among these jurisdictions is to support the continued use of property, while also giving effect to the intent of the parties when granting the original conveyance for the beneficial enjoyment of the property owner. This rationale is consistent with our own precedent regarding the creation of easements by necessity, which likewise recognizes the importance of allowing the productive use of property and accomplishing its intended use. See *Deane* v. *Kahn*, supra, 317 Conn. 176–77. We are persuaded by these authorities and conclude that public policy favors recognizing easements by necessity for utilities over an existing right-of-way when the requi-

site necessity is established.[7]

Having thus concluded, we take this opportunity to provide guidance on the proper standard to apply when determining whether an easement by necessity for utilities has been established. When an easement of physical access already exists, an expansion of that easement will be allowed so long as it is reasonably necessary for the beneficial enjoyment of the dominant estate and does not unreasonably impair the servient estate owner's beneficial enjoyment of his or her property. *New York Central Railroad Co.* v. *Yarian*, supra, 219 Ind. 485; *Tong* v. *Feldman*, supra, 152 Md. 404; *Davis* v. *Jefferson County Telephone Co.*, supra, 82 W. Va. 359–60.

With regard to determining what is reasonably necessary for the beneficial enjoyment of the property, this court's jurisprudence has routinely recognized that the intent of the parties regarding the use of the property at the time of severance of the parcels is a factor of vital importance in determining the existence and scope of easements by necessity for access. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 398–401; *Marshall* v. *Martin*, supra, 107 Conn. 36; *Robinson* v. *Clapp*, supra, 65 Conn. 385.[8] We conclude that the parties' intent as to the use of the property at the time of severance should also be considered for easements by necessity for utilities along a preexisting right-of-way for two reasons. First, it fairly accounts for the expectations of both property owners as to the general use of the property. See *Ashby* v. *Maechling*, supra, 356 Mont. 76 ("easements by necessity cannot be used at will, but must be exercised with due regard to the rights of both parties so that the use does not encroach upon the land of his grantor further than circumstances render it necessary" [internal quotation marks omitted]). Second, it furthers public policy insofar as it assumes that the parties reasonably would not have intended for the land to be left incapable of being put to beneficial use. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 400 ("the presumption as to the intent of the parties is a fiction of law . . . and merely disguises the public policy that no land should be left inaccessible or incapable of being put to profitable use").

Although prior use of the property may evidence the parties' intentions, when the original conveyance was made long before the advent of modern utilities, such as electricity, a question arises as to whether the parties could have intended for the property's future use to include such developments. Some jurisdictions gauge the necessity in relation to the time of the original conveyance. See *Gacki* v. *Bartels*, supra, 369 Ill. App. 3d 293; see also 1 Restatement (Third), supra, § 2.15, comment (c), p. 206. Courts in other jurisdictions, however, interpret the prior use to include those uses that could have been reasonably foreseen by the other party

at the time of severance. See, e.g., *Stroda* v. *Joice Holdings*, 288 Kan. 718, 722–23, 207 P.3d 223 (2009) ("[p]rior use, as a factor in determining the intent of the parties, includes not only uses that were known at the time of the conveyance, but also those that had a possibility of being known at that time and those that a party might reasonably have foreseen the other party . . . expected" [internal quotation marks omitted]); id., 728 ("[e]ven when the use of the easement at the time of creation has not included utility support, courts have found that the reasonable use of the property in current times requires utility services" [internal quotation marks omitted]); *Ashby* v. *Maechling*, supra, 356 Mont. 78 ("[T]he scope of an implied easement should consider the actual uses being made [of the dominant estate] at the time of the severance, such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance, and such uses as the parties might reasonably have expected from future uses of the dominant tenement. . . . [I]f the severance occurred at a time prior to the general use of motor vehicles and electric power, an easement by necessity may still allow for reasonable technological developments . . . ." [Internal quotation marks omitted.]); see also 1 Restatement (Third), supra, comment (d), pp. 207–208.

We agree with those jurisdictions that permit the expansion of preexisting access easements to include a new easement by necessity for changes in technology. Their position is more in accord with our case law, which has never determined the scope of an implied easement solely by examining what was necessary at the time of severance. See *Marshall* v. *Martin*, supra, 107 Conn. 36–37; see also *Deane* v. *Kahn*, supra, 317 Conn. 175–77. Accordingly, when examining the intent of the parties when the conveyance was made and the extent to which the property was intended to be used, our courts must also consider modern technological developments to ensure that "the wheels of progress and invention" do not stop and society can continue to change and improve. *Davis* v. *Jefferson County Telephone Co.*, supra, 82 W. Va. 360. To not do so would ignore the public policy of encouraging the profitable use of property, and leave property to be underutilized or even abandoned. See *Deane* v. *Kahn*, supra, 317 Conn. 177; *Robinson* v. *Clapp*, supra, 65 Conn. 385; see also 1 Restatement (Third), supra, § 2.15, comment (d), pp. 207–208.[9]

When evaluating the relative enjoyment of the respective properties and the burden on those properties, courts must examine not only what enjoyment the dominant tenement's owner can obtain from the expansion of the access easement to include utilities, but also what effect the installation of utilities would have on the servient tenement and its owner's beneficial enjoyment of his or her own property. See *Collins* v. *Prentice*,

supra, 15 Conn. 44. In many cases, courts have concluded that installing the utilities, such as through electrical poles and underground electrical access, would not significantly burden the servient estate to foreclose imposing the easement. *New York Central Railroad Co.* v. *Yarian*, supra, 219 Ind. 484–87; *Morrell* v. *Rice*, supra, 622 A.2d 1160; *Ashby* v. *Maechling*, supra, 356 Mont. 78–79; *Dowgiel* v. *Reid*, supra, 359 Pa. 460; *Regan* v. *Pomerleau*, supra, 197 Vt. 465; *Davis* v. *Jefferson County Telephone Co.*, supra, 82 W. Va. 361. Easements for utilities will not, however, always trump the servient estate owner's right to beneficial enjoyment of his or her own property. In *Fleming* v. *Napili Kai, Ltd.*, supra, 50 Haw. 70, the Hawaii Supreme Court rejected the proposed utility easement, which was to be used as a drainage ditch, as it unreasonably interfered with the use of the road. The court still recognized, however, that an easement was necessary, and tasked the trial court with determining the proper placement of the easement to benefit both parties. Id. This approach evidences that courts may impose conditions to account for the interest of both estates.

In sum, to evaluate properly the beneficial enjoyment of the parties' respective properties, the court must engage in a balancing test. The court must examine the relative enjoyment of the respective properties and the burden on those properties, and determine whether the burden is disproportionately weighted toward one party. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 401; *Robinson* v. *Clapp*, supra, 65 Conn. 385; see also Restatement (Third), supra, § 2.15, comment (d). An easement by necessity for utilities should be granted over an existing physical access easement when the dominant estate has a reasonable need for the utility, in accordance with the intention of the parties as to the use of the property, unless the burden interferes with that owner's beneficial enjoyment of the property. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 401; *Robinson* v. *Clapp*, supra, 385; Restatement (Third), supra, § 2.15, comment (d), pp. 207–208. In the event use of the easement for utilities does impair the enjoyment of the servient estate, the court must then determine whether the need of the dominant estate is so great that the easement should still be granted or if it could be altered so as to limit the burden on the servient estate. See *Fleming* v. *Napili Kai, Ltd.*, supra, 50 Haw. 70.

Having reached this conclusion, we briefly explain why we are not persuaded by the defendant's arguments, which effectively advocate for a test of strict necessity. The defendant substantially relies upon *Deane* v. *Kahn*, supra, 317 Conn. 157, and its predecessors. Simply put, those cases relate to a different question, namely, the right to physical access for ingress and egress when no easement previously exists. Such physical access, by its very nature, involves a substan-

tial infringement on the rights of the owner of the servient estate. An expansion of an existing easement to accommodate additional use for the beneficial enjoyment of property is of a different nature. It is true that our case law has restricted the granting of easements by necessity to property that is truly landlocked; however, as explained previously in this opinion, this court has never been presented with a situation involving an easement by necessity for commercial utilities over a preexisting right-of-way easement.

For similar reasons, we also disagree with the defendant that the court must necessarily engage in an analysis of whether other substitutes exist to provide utilities to the dominant estate. In *Marshall* v. *Martin*, supra, 107 Conn. 37, this court stated that if the cost of finding another substitute to access the parcel would exceed the value of the property, then an easement by necessity could be granted. In *Marshall*, this court emphasized the proportionality of the cost when finding a suitable substitute, and that an easement will be granted only if a substitute could be obtained at a disproportionate cost. Id., 38. When an easement by necessity for utilities is being considered, however, it would not be prudent to examine the cost of finding a substitute compared to the overall value of the property—the cost of obtaining access to utilities would rarely, if ever, exceed the value of the property. This is in accord with many other jurisdictions that have examined this same issue, and avoids the thorny evaluation of cost and how it relates to the value of the property. See *New York Central Railroad Co.* v. *Yarian*, supra, 219 Ind. 484–87; *Morrell* v. *Rice*, supra, 622 A.2d 1160; *Dowgiel* v. *Reid*, supra, 359 Pa. 448, 453; *Davis* v. *Jefferson County Telephone Co.*, supra, 82 W. Va. 360–61. Nonetheless, the availability of alternative reasonable methods of obtaining utilities for the dominant estate may be relevant, as such considerations could bear on the question of reasonable necessity in some cases—for example, examining the need for cable lines where satellite would provide the same services without intruding on the servient estate.

Applying the foregoing standards to the present case, we conclude that the motion for summary judgment should have been denied. Taking all evidence in favor of the nonmoving party, the plaintiff, we conclude that a genuine issue of material fact exists as to whether an easement by necessity over the defendant's property should be granted for the instillation of commercial utilities.

It is without question that the plaintiff's property was, and is, intended to be used as a residential lot, simply from the surrounding lots and the residential character of the neighborhood. Even if the original conveyance did not anticipate the availability of modern conveniences, easements by necessity for utilities can accommodate those needs reasonably necessary for the

beneficial enjoyment of property in the modern era. The defendant has proffered no evidence at this stage to demonstrate that it would be burdened by granting the easement, as it appears that the plaintiff need only connect to an existing electrical conduit.[10]

Indeed, although we conclude that the trial court should not have rendered summary judgment in favor of the defendant because a genuine issue of material fact exists, we make no determination as to whether the plaintiff has satisfied his burden of establishing that he is entitled to an easement by necessity for utilities. The record at this stage in the proceedings is inadequate to make that determination. On remand, the trial court must make factual determinations about the intent of the parties regarding the use of the property at the time of severance, the relative enjoyment of the respective properties, and the burden that would be placed on those properties by the easement. The court should then balance those factors in order to determine the overall costs and benefits to the parties and arrive at an equitable solution.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The complaint names seven additional defendants who reside on certain nearby properties. These additional defendants previously entered into an agreement with Goodspeed Airport, LLC, granting utility line access to their respective properties. The plaintiff claims in his complaint to have named these additional defendants for purposes of notice pursuant to General Statutes § 52-102. We note that the plaintiff subsequently withdrew the action with respect to these additional defendants and that they are not parties to the present appeal. For the sake of simplicity, we refer to Goodspeed Airport, LLC, as the defendant.

[2] The right-of-way for the benefit of abutting properties had been acknowledged in various deeds throughout the years preceding the defendant's 1999 warranty deed.

[3] The plaintiff originally filed a complaint in 2011 alleging the creation of an easement by necessity *and* implication. The trial court granted the defendant's motion to strike these claims, and, thereafter, the plaintiff filed an amended complaint. The plaintiff's amended complaint omitted the claim alleging the creation of an easement by implication, retained the claim alleging the creation of an easement by necessity, and added claims alleging a violation of General Statutes § 52-480, negligence, nuisance, and obstruction of a right-of-way. The plaintiff later withdrew all claims except the count alleging the creation of an easement by necessity for commercial utilities.

[4] The defendant filed a petition for certification to appeal from the judgment of the Appellate Court, which we granted, limited to the following question: "Did the Appellate Court properly determine that the trial court incorrectly concluded, as a matter of law, that an easement by necessity may be granted to a landlocked parcel only for the purpose of ingress and egress?" *Francini* v. *Goodspeed Airport, LLC*, 321 Conn. 919, 137 A.3d 764 (2016).

[5] The defendant contends that the reliance upon many of these treatises, insofar as they discuss implied easements and not easements by necessity, is misplaced. We disagree. Both easements by implication and easements by necessity are inherently "implied" easements, because they are not "express." Thus, many of the treatises cited within this opinion use the term "implied" easements to refer to both easements by implication and easements by necessity and, thereafter, distinguish between the two types of implied easements. See 25 Am. Jur. 2d, supra, § 18, p. 688; see also J. Bruce & J. Ely, supra, §§ 4:1 and 4.2, pp. 4-2 through 4-7; 1 Restatement (Third) Property, Servitudes § 2.11, p. 153 (2000). Indeed, the first Restatement of Property did not distinguish the two types of easements, but instead provided a list of varying factors to consider with implied easements

generally. See, e.g., 5 Restatement, Property §§ 474 through 476, pp. 2972–89 (1944).

[6] The defendant contends that many of these cases should not be relied upon, as they interpret the necessity of utilities in the context of a preexisting right-of-way and that the courts in these cases looked to the scope of the original deed granting the right-of-way. We disagree. Although these cases arose in the context of a preexisting right-of-way, they stand for the proposition that access to utilities is indeed necessary in modern times, and examine the scope of the original easement in relation the purpose for which the dominate estate was intended to be used. See *Fleming* v. *Napili Kai, Ltd.*, supra, 50 Haw. 69–70; *Cline* v. *Richardson*, supra, 526 N.W.2d 169; *Dowgiel* v. *Reid*, supra, 359 Pa. 460; *Davis* v. *Jefferson County Telephone Co.*, supra, 82 W. Va. 360; *Atkinson* v. *Mentzel*, supra, 211 Wis. 2d 639–40. The defendant's attempt to distinguish these cases carries even less weight considering that the present case also involves a preexisting right-of-way and otherwise extremely similar facts.

[7] We underscore that our holding in the present case is limited to the expansion of an existing access easement for ingress and egress to allow for the provision of utilities, a commodity recognized as essential to most property uses. This opinion should not be read to suggest that expanding an access easement for the provision of every modern convenience would likewise be viewed as a reasonable necessity. See *Robinson* v. *Clapp*, supra, 65 Conn. 396 (stating "that enjoyment is not reasonable which deprives the defendant of any use of his property, in order merely that the plaintiff may, by reason of such deprivation, have a more comfortable, convenient and better use of his own" and finding error where trial court applied "the wrong standard, substituting convenience for necessity as the test by which to determine the existence of the right claimed").

[8] The defendant contends that examining the intent of the parties and the beneficial enjoyment of property are factors in examining easements by implication, and that the test for easements by implication and easements by necessity have been confused by both trial and appellate courts through the years. Although we agree that the line between the two kinds of implied easements has been blurred, the intent of the parties and the beneficial use of property are still key components of both types of easements. The distinction between the two arises from the way the intent is determined: by examination of the express terms of the deed in cases of easements by implication, and by examination of the presumed intent of the parties by the circumstances of the conveyance in cases of easements by necessity. See *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 401; *D'Amato* v. *Weiss*, 141 Conn. 713, 717, 109 A.2d 586 (1954); *Marshall* v. *Martin*, supra, 107 Conn. 36; *Robinson* v. *Clapp*, supra, 65 Conn. 385.

[9] This opinion should not be interpreted as granting unrestricted rights across any person's land in order to satisfy the needs of another property owner. The only rights reserved in an easement by necessity are those between the original and subsequent owners and the new owners of the severed parcel. See *Robinson* v. *Clapp*, supra, 65 Conn. 385; 1 Restatement (Third), supra, § 2.15, comment (c), p. 206.

[10] We observe that this conduit appears to exist because of costs borne by other property owners who are currently using the utility lines. Should the trial court determine that the plaintiff has an easement by necessity for utility access, it would be free to fashion an equitable remedy regarding the plaintiff's share in those costs, but we will not comment on that matter in this opinion.

---