MINNIE SPENCER, PLAINTIFF-RESPONDENT, v. NAPO-
LEON B. FAIRCLOUGH AND CHARLES HALSTED, DE-
FENDANTS-APPELLANTS.

Argued February 3, 1948—Decided May 13, 1948.

For the appellants, *Charles Halsted.*

For the respondent, *Adolph Schlesinger* (*L. Stanley Ford,*
of counsel).

The opinion of the court was delivered by

HEHER, J.   Defendants appeal from a "default" judgment
of the Supreme Court in favor of plaintiff entered on April
18th, 1946, for $2,523.27 and costs, on an assessment of
damages by the clerk, and also from a rule made by a Circuit
Court Judge, sitting as a Supreme Court Commissioner, on
the ensuing January 10th, discharging on the merits defend-
ants' rule to show cause why the judgment should not be
opened as improvidently entered and the defendants allowed
to defend the action.

The proceeding to open the judgment entertained by the
Supreme Court Commissioner is *coram non judice.*   Rule 94

of the Supreme Court, as amended on May 15th, 1943, em-powers the Circuit Court Judges, acting as commissioners of the court, to make such order as the court might make in respect of, *inter alia,* the "opening of default judgments." But the rule (assuming its efficacy) plainly has reference to judgments entered in default of a pleading or, perhaps, ap-pearance at the trial after issue joined. And there was no such default here. Indeed, respondent now suggests that the judgment was entered "by consent" rather than "by default." Yet, for reasons to be presently mentioned, it was not that; and, even though it was, the clerk of the Supreme Court was not empowered to assess the damages.

Plaintiff, as the assignee of a co-partnership trading as Pine Brook Iron Works, seeks recovery of the price of fabri-cated steel beams and columns sold to defendants by plaintiff's assignor. Defendants answered admitting the making of the contract, but denying delivery of the subject-matter of the complaint and all liability for the price of undelivered steel. Upon the cause coming on for trial on January 7th, 1946, the parties entered into two separate stipulations:

Stipulation "A" recited an indebtedness of defendants to plaintiff in the sum of $2,900, including interest and costs, and embodied an agreement by the defendant Halsted to deliver "a series of notes totaling $2,600 and $300 in cash on or before March 7th, 1946," each note to be in the sum of $260, the first to mature on April 8th, 1946, and one to mature "thereafter on the 8th day of each and every month until the full amount of $2,600 and interest shall have been paid," subject to acceleration in the event of default "in any one payment," and that "in the event of a default, judgment may be entered" in the cause by plaintiff's attorney "for the full balance due;"

Stipulation "B" declared an indebtedness by defendants to plaintiff in the sum of $4,297.77, and contained an agreement that "the defendants will be entitled to a credit of $1,671.47 in the event that the steel is not delivered;" that "In the event that the defendants elect to have delivery of the steel, the full amount of $4,297.77 shall become due, with interest from January 1st, 1945;" and that "the defendants shall have

sixty days' time in which to make the election for the delivery of the steel hereinabove mentioned, at the end of which time the plaintiff may proceed to judgment for the amount of $4,297.77 if the steel is delivered, and $2,626.30, plus interest from January 1st, 1945, if the steel is not delivered."

It seems to be conceded that, in the ascertainment of the intention of the parties, the stipulations are to be read and construed as one. And the sense of the writings would seem to be that if defendants exercised the option granted in Stipulation "B," and the steel was delivered as therein provided, the contract price of $4,297.77 would thereupon become payable, and plaintiff could enter judgment for that amount, if need be; but if the option was not exercised, defendants' obligation would be $2,626.30, payable as provided in Stipulation "A." The difference between these sums represents a credit for the scrap or salvage value of 16 tons of steel which had been fabricated in the performance of the original contract for the sale of 52 tons of steel. Defendants urge that if they elected to take steel in that quantity, and plaintiff and her assignor defaulted in delivery, judgment could not go against them under either stipulation.

Thus, the crux of the case is whether there was a timely exercise of the option reserved by Stipulation "B." Defendants assert the affirmative and a breach by plaintiff and her assignor of the contract which thereby came into being; plaintiff maintains the negative and denies default of her contractual obligation. The judgment was entered *ex parte* on the assumption that the option had not been exercised. The parties differ as to the significance of a letter forwarded on March 5th, 1946 by the defendant Halsted to plaintiff's attorney (he was also the attorney of Pine Brook Iron Works), accompanied by a check for $300. Plaintiff insists that the communication was a mere request for an extension of the option, and the payment of $300 was made pursuant to Stipulation "A;" defendants regard the letter (so the defendant Halsted stated under oath) as an exercise of the option under Stipulation "B," and the remittance as a payment on account of the purchase price of $4,297.77. Be that as it may, the defendant Halsted testified in the proceeding

to open the judgment that he gave oral notice within the allotted time of his election to exercise the option; that there was also a supplemental parol agreement for the sale and delivery of an additional 28 tons of steel; and that plaintiff and her assignor failed to render performance.

There does not seem to be substantial controversy between the parties as to the meaning of the stipulation. Plaintiff also regards the option provision of Stipulation "B" as pivotal. In her "Proof of Assessment of Damages," an affidavit made by her attorney of record, to which Stipulation "B" only was annexed, it is stated that "the defendant [sic] has failed to make payments in accordance with said stipulation, in that they made no election for the delivery of the steel," and there is due to plaintiff "on such stipulation the full sum of $2,626.30," plus interest, less "a credit of $300." And the clerk's assessment of damages presumes to determine the amount "due on [the] stipulation"—the sum owing in the event of the non-exercise of the option; and the judgment embodies a finding that "the terms of [the] stipulation were not complied with," and "the defendants are in default of the terms of [the] stipulation."

It was not within the province of the clerk under *R. S.* 2:27–195 to assess the damages and enter judgment for the assessment as for want of an answer to the complaint. The statutory procedure for the entry of a judgment by default had no application. There was no default here constituting an admission of liability for a liquidated obligation under the stipulation which would warrant the assessment of damages by the clerk. A default ordinarily serves as an admission of the truth of the cause of action pleaded. There was no such admission of the non-exercise of the option. The clerk thereby presumed to make, not only a judicial determination utterly beyond his purely ministerial province, but to settle the rights of the parties under the contract embodied in the stipulation on an *ex parte* application, and thus without due process of law:

A judgment by consent is in essence a contract of record; and the rendition of a judgment upon consent is a judicial function and an exercise of the judicial power. *Pope v. United*

*States,* 323 *U. S.* 1; 65 *S. Ct.* 16; 89 *L. Ed.* 3. The entry of a judgment upon consent is "a judicial act." *United States* v. *Swift & Co.,* 286 *U. S.* 106; 52 *S. Ct.* 460; 76 *L. Ed.* 999. It is a judicial act to give judgment on a legal obligation which the court finds to be established by stipulated facts. *J. I. Case Co.* v. *National Labor Relations Board,* 321 *U. S.* 332; 64 *S. Ct.* 576; 88 *L. Ed.* 762. Here, for instance, the consent to the entry of judgment was qualified and not absolute; and it was plainly a judicial function to determine whether the condition upon which the right to enter the judgment depended had been met. The consent was not unqualified, leaving nothing more for the determination of the court. Compare *Livingston* v. *Woolworth,* 15 *How. (U. S.)* 546; 14 *L. Ed.* 809. Indeed, as we have seen, the judgment here was entered not on the hypothesis of consent, but of a default; and the supposed default related to the exercise of the option reserved in the stipulation. Not only was it beyond the power of the clerk to perform this judicial act; the judgment was entered without affording appellants an opportunity to be heard on reasonable notice as to the existence of the state of facts upon which the right to judgment turned, and so the requirements of due process were disregarded.

Thus, there is error in matter of law which is apparent on the face of the record, although such apparency is not indispensable to relief. It is an inherent and fatal defect which calls for the vacation of the judgment. *Knight* v. *Cape May Sand Co.,* 83 *N. J. L.* 597; *Corn* v. *Kaplan,* 103 *Id.* 628.

The judgment is accordingly reversed, with costs; and the cause is remanded for further proceedings in conformity with this opinion.

*For affirmance*—BODINE, WACHENFELD, DILL, McLEAN, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DONGES, HEHER, EASTWOOD, BURLING, WELLS, FREUND, SCHETTINO, JJ. 9.