J-S78014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL E. PLOWS AND BERNADETTE PLOWS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS ROLES AND JESSICA M. ROLES | : | |
| | : | No. 631 WDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered March 24, 2017
In the Court of Common Pleas of Cambria County Civil Division at No(s):
2014-1109

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                 **FILED JANUARY 22, 2018**

Appellants, Dennis Roles and Jessica M. Roles, appeal from the judgment entered on March 24, 2017, following a bench trial wherein the trial court granted Michael E. Plows and Bernadette Plows (hereinafter "the Plows") the right to install a sewer line through a right-of-way that traverses Appellants' property.  Upon review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> This case involves a dispute between adjoining landowners. [The Plows] purchased a property with an address of 664 Headricks Road, Johnstown, PA 15909 on September 27, 2000. The Plows' deed for their property includes a 14[-]foot right-of-way that traverses [Appellants'] property.  In 2002, the Plows began to experience problems with their septic tank and eventually, after trying several remedial measures, they applied to have municipal water installed through the Jackson/East

_____
\*   Retired Senior Judge assigned to the Superior Court.

Taylor Township Sewer Authority. [Appellants] purchased the adjoining property in 2010. At some point thereafter, animosity between the two neighbors developed. Particularly, Mrs. Plows testified that Mr. Roles during several occasions verbally attacked her with profanity laden insults.

The Plows also submitted into evidence several pictures of what they described as [Appellants'] attempts to block their use of the right-of-way with barriers and vehicles. A retired contractor, Jack Houston, testified that he and his son measured the distance between the municipal sewer lines and the Plows['] residence. The distance was within one hundred fifty (150) feet, meaning the Plows are required to tap into the municipal system.

On March 13, 2014, the Plows filed a complaint in equity seeking to enjoin [Appellants] from interfering or obstructing the Plows' usage of the right-of-way, enjoin [Appellants] from harassing them in any manner, order that the Plows are permitted to install a new sewer line through the right-of-way, order that the Plows are permitted to have a temporary easement in addition to the current right-of-way to install the sewer line, retain jurisdiction to enforce the order and any appropriate relief. On November 5, 2014, the Plows filed a petition for special injunction/permanent injunction asking for a rule to show cause why the relief requested in regards to the sewer pipe should not be granted pending the outcome of the matter on the merits. On November 12, 2014, the [trial] court scheduled a status conference in this matter for November 26, 2014. On November 26, 2014, this conference was continued to January 21, 2015 at the request of the Plows' attorney. On December 23, 2014, [Appellants] filed a response to the Plows' complaint and petition in the nature of preliminary objections. Argument on the preliminary objections was scheduled for February 16, 2015 and a non-jury trial was set for March 4, 2015.

On February 13, 2015, the Plows filed a response to [Appellants'] preliminary objections. On February 25, 2015, the [trial] court overruled [Appellants'] preliminary objections. On April 2, 2015, [Appellants] filed an answer with new matter. On May 8, 2015, the Plows filed an answer to [Appellants'] new matter. On May 1, 2015, a non-jury trial was held to conclusion with the parties submitting post-trial legal memoranda. On June 8, 2015, the [trial] court rendered its verdict and granted [the

Plows] the right to install the sewer line through the right-of-way upon certain conditions. On June 12, 2015, [Appellants] filed a motion for post-trial relief and a request for a transcript. For reasons unknown to the [trial] court, this motion was never argued before the [trial] court or scheduled for motions court as per Cambria County local practice. There was no docket activity until July 15, 2016, when the Plows filed a petition to enforce court order. Argument on this petition was scheduled for September 28, 2016 and at this point the [trial] court also became aware, for the first time, that the post-trial relief requested by [Appellants] had not been heard nor decided. On July 18, 2016 the [trial] court entered an order denying the post-trial relief requested by [Appellants]. On August 2, 2016, [Appellants] filed a notice of appeal. On August 9, 2016[,] the [trial] court ordered [Appellants] to file a concise statement of [errors] complained of on appeal. On August 18, 2016, [Appellants] complied and filed their concise statement. On September 14, 2016, [this] Court quashed the appeal *sua sponte* because no judgment had been entered on the [trial] court's verdict. On March 16, 2017, counsel for [Appellants] filed a motion to withdraw as counsel and on March 27, 2017, the motion was granted[.] On March 24, 2017, counsel for the Plows filed a praecipe for final judgment and judgment was entered of record for the Plows. On April 24, 2017, [Appellants] filed a notice of appeal and on May 8, 2017 complied with the [trial] court's order to file a concise statement of [errors] complained of on appeal. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 10, 2017.]

Trial Court Opinion, 5/10/2017, at 1-4 (superfluous capitalization, record citations, and footnote omitted).

On appeal, Appellants present the following issues for our review:

I.   Did the [trial c]ourt err in granting an injunction where the grant constituted an unlawful expansion of an unambiguous and express easement for a road right-of-way?

II.  Did the [trial c]ourt err in granting the injunction where no evidence of necessity was presented?

III.   Does the grant of the expansion of an easement without compensation constitute an unlawful taking for private purposes and without compensation?

Appellants' Brief at 1.

All of Appellants' issues are interrelated, so we will examine them together.    In their first issue presented, Appellants argue that the easement at issue unambiguously granted the Plows a right-of-way for ingress and egress only.  Thus, they argue that the trial court's award of an injunction "effectively allows the Plows to expand[] its use for a sewer line [and] further infringes upon [Appellants'] property rights [which] may not be expanded beyond the original grant."    **Id.** at 2-3.  Appellants attempt to distinguish the three cases relied upon by the trial court in rendering its decision – **Dowgiel v. Reid**, 59 A.2d 115 (Pa. 1948), **Pope v. Muth**, 481 A.2d 355 (Pa. Super. 1984), and **PARC Holdings, Inc. v. Killiam**, 785 A.2d 106 (Pa. Super. 2001).  **Id.** at 4-6.  Appellants also challenge the Plows' position that the expansion of the easement was a necessity.  **Id.** at 6.  More specifically, Appellants contend that there was no evidence that the adjoining properties were once unified in title or that the claimed necessity for a sewer line existed at the time of the severance of title.  **Id.**  Finally, Appellants argue that the trial court's action represented an expansion or further encumbrance upon their property constituting an unconstitutional taking pursuant to eminent domain.  **Id.** at 7.

Our standard and scope of review are as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are

- 4 -

supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, as the issue herein centers on the interpretation of an easement, which like any contract concerns a question of law, our scope of review is plenary.

\* \* \*

The law on the interpretation of easements is clear. A right of way is an easement, which may be created by an express grant. To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

Ambiguous words are construed in favor of the grantee. Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances.

*Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549–550 (Pa. Super. 2004) (internal citations and quotations omitted).

Our Court was confronted with a factual scenario similar to the case *sub judice* in *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001). At issue there was the interpretation of an express easement for a right-of-way and whether its use "was specifically limited by the terms 'ingress and egress' to merely pedestrian or vehicular access" or whether it

could be used for the installation of utilities through the easement. **PARC Holdings**, 785 A.2d at 109. Citing our Supreme Court's decision in **Dowgiel**,[1] **supra**, we determined that Pennsylvania has adopted the rule that where a right of way is granted or reserved without limit of use, it may be used for any purpose to which the land accommodated thereby may naturally and reasonably be devoted. **Id.** at 113. We looked at the plain language of the easement in **PARC Holdings** and concluded that the right-of-way was ambiguous because the language did not specify a limited purpose for access, such as "for the purpose of maintaining a water system" or "for pedestrian or vehicular travel only." **Id.** at 112. The **PARC Holdings** Court ultimately recognized that it was proper to install utilities that naturally and reasonably may be accommodated by an easement. **Id.**

Here, the easement at issue provides, in pertinent part, "Together with the right of ingress and egress over, through, and upon a certain 14 foot easement for a road right of way running over through and upon land" (as described more particularly). Complaint in Equity, 3/13/2014, at Exhibit A. Upon review, the easement does not have a limited purpose and, thus, is

---

[1] In **Dowgiel**, our Supreme Court concluded that the grant of a right-of-way for a private road included the right to construct and install electricity lines across the easement as "a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity[.]" **Dowgiel**, 59 A.2d at 121.

ambiguous. After conducting an in-person view of the properties and hearing testimony, the trial court "credit[ed] the evidence offered by [the Plows] as to the difficulties experienced with the on-site septic system and the fact that connecting into the municipal sanitary sewer system would make the residence 'liveable' [as set forth in *Dowgiel*]." Trial Court Opinion, 5/10/2017, at 7 (footnote incorporated). As such, the trial court granted the Plows relief to install sewer lines through the easement with appropriate notice to Appellants and upon the condition that the Plows bear responsibility for returning the right-of-way to its preconstruction condition. Upon review of the facts of this case, together with applicable law, we discern no abuse of discretion or error of law in the trial court's determinations. With no limitations on the use of the easement for ingress or egress, it was proper to allow the installation of sewer lines to make the Plows' property liveable. Moreover, because the express easement provided the Plows with the right to place a sewage line, there was no need to show an easement by necessity. Finally, there was no unconstitutional taking, expansion, or other encumbrance on Appellants' property, since the existing easement allowed for the installation of sewage lines. As such, Appellants are not entitled to relief and all three of their issues are without merit.

Judgment affirmed.

Judgment Entered.

- 7 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/22/2018



# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CIVIL DIVISION

MICHAEL E. PLOWS and
BERNADETTE M. PLOWS,
    Plaintiffs,

    vs.

DENNIS ROLES and
JESSICA M. ROLES,
    Defendants.

: No. 2014-1109

: 1925 (b) Opinion

2017 MAY 10 PM 1:48
FILED FOR RECORD
PROTHONOTARY
CAMBRIA COUNTY, PA

## OPINION

Kiniry, J., _10_ May 2017. This matter comes before the Court as a result of Defendants Dennis Roles and Jessica Roles ("Roles") filing a Statement of Matters Complained of on Appeal. For the reasons set forth below, the Court respectfully submits that the Court's decision in this matter should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a dispute between adjoining landowners. Michael Plows and Bernadette Plows ("Plows") purchased a property with an address of 664 Headricks Road, Johnstown, PA 15909 on September 27, 2000. Transcript of Non-Jury Trial, 5/11/15, pp. 4-5. The Plows' deed for their property includes a 14 foot right-of-way that transverses the Roles' property. Id., p. 6, ll. 23-25, p. 7, ll. 1-2. In 2002, the Plows began to experience problems with their septic system and eventually, after trying several remedial measures, they applied to have municipal water installed through the Jackson/East Taylor Township Sewer Authority. Id., pp. 8-9. The Roles purchased the adjoining property in 2010. Id., p. 20, ll. 20-25. At some point thereafter, animosity between the two neighbors developed. Particularly, Mrs. Plows testified

1

that Mr. Roles during several occasions verbally attacked her with profanity laden insults. Id. pp. 29-30, 32-33.

The Plows also submitted into evidence several pictures of what they described as Mr. Roles' attempts to block their use of the right-of-way with barriers and vehicles. Id. pp. 35-41, Plaintiff's Exhibits H1-H7. A retired contractor, Jack Houston, testified that he and his son measured the distance between the municipal sewer lines and the Plows residence. Id., p. 62, ll. 2-13. The distance was within one hundred fifty (150) feet, meaning the Plows are required to tap into the municipal system. Id. p. 62, ll. 8-13.

On March 13, 2014, the Plows filed a Complaint in Equity seeking to enjoin the Roles from interfering or obstructing the Plows' usage of the right-of-way, enjoin the Roles from harassing them in any manner, order that the Plows are permitted to install a sewer line through the right-of-way, order that the Plows are permitted to have a temporary easement in addition to the current right-of-way to install the sewer line, retain jurisdiction to enforce the order and any other appropriate relief. On November 5, 2014, the Plows filed a Petition for Special Injunction/Permanent Injunction asking for a Rule to Show Cause as to why the relief requested in regards to the sewer pipe should not be granted pending the outcome of the matter on the merits. On November 12, 2014, the Court scheduled a status conference in this matter for November 26, 2014. On November 26, 2014, this conference was continued to January 21, 2015 at the request of the Plows' attorney. On December 23, 2014, the Roles filed a response to the Plows' complaint and petition in the nature of preliminary objections. Argument on the preliminary objections was scheduled for February 16, 2015 and a non-jury trial set for March 4, 2015.

2

On February 13, 2015, the Plows filed a response to the Roles' preliminary objections. On February 25, 2015, the non-jury trial was continued to May 11, 2015 on the motion of the Plows' attorney. On March 3, 2015, the Court overruled the Roles' preliminary objections.[1] On April 2, 2015, the Roles filed an Answer with New Matter. On May 8, 2015, the Plows filed an Answer to the Roles' New Matter. On May 11, 2015, a non-jury trial was held to conclusion with the parties submitting post-trial legal memoranda. On June 8, 2015, the Court rendered its verdict and granted the Plaintiff the right to install the sewer line through the right of way upon certain conditions. On June 12, 2015, the Roles filed a Motion for Post-Trial Relief and a Request for a Transcript. For reasons unknown to the Court, this Motion was never argued before the Court or scheduled for Motions Court as per Cambria County local practice. There was no docket activity until July 15, 2016, when the Plows filed a Petition to Enforce Court Order. Argument on this Petition was scheduled for September 28, 2016 and at this point the Court also became aware, for the first time, that the Post Trial Relief requested by the Roles had not been heard nor decided. On July 18, 2016 the Court entered an Order denying the Post-Trial Relief requested by the Roles. On August 2, 2016, the Roles filed a Notice of Appeal. On August 9, 2016 the Court ordered the Roles to file a Concise Statement of Matters Complained of on Appeal. On August 18, 2016, the Roles complied and filed their Concise Statement. On September 14, 2016, the Superior Court quashed the appeal sua sponte because no judgment had been entered on the Court's verdict. On March 16, 2017 counsel for Roles filed a Motion to Withdraw as Counsel and on March 27, 2017, the Motion was granted by Order of the Honorable Judge Linda Rovder Fleming of the Cambria County Court of Common Pleas. On March 24,

---

[1] On March 13, 2015, the Court entered an Amended Order removing a typographical error from the Order of March 3.

3

2017 counsel for the Plows filed a Praecipe for Final Judgment and judgment was entered of record for the Plows. On April 24, 2017, the Roles filed a Notice of Appeal and on May 8, 2017 complied with the Court's Order to file a Concise Statement of Matters Complained of on Appeal.

The Roles raise four issues for review. First, the Roles argue that the Court erred in granting an injunction where the Plaintiffs failed to prove that the requested relief was a necessity. Second, the Roles argue that the Court erred in failing to find that the Plaintiffs had waived any right to the relief requested due to laches. Third, the Court erred in granting the injunction in that such a grant constituted an unlawful expansion of an unambiguous and express easement for a road right-of-way. Fourth, the Court erred in granting the injunction as the grant amount to an unlawful condemnation and taking pursuant to the Pennsylvania Constitution and the United States Constitution.

## DISCUSSION

In arriving at our verdict, the Court relied principally on the same line of cases we cited in our Order of March 3, 2015 that overruled the Roles' Preliminary Objections.[2] We view the latter two cases as progeny of the Dowgiel case and shall examine the most recent case PARC v. Killia. In PARC the Superior Court, citing Dowgiel, held:

> Our Supreme Court's decision in Dowgiel v. Reid, 359 Pa. 448, 59 A.2d
> 115 (1948), illustrates that Pennsylvania has adopted the rule that where a
> right of way is granted or reserved without limit of use, it may be used for
> any purpose to which the land accommodated thereby may naturally and
> reasonably be devoted. In Dowgiel, the court was asked to determine
> whether "the right to use a road to and from one's habitation" also

---

[2] Dowgiel v. Reid, 59 A.2d 115, (Pa.1948), Pope v. Muth, 481 A.2d 355 (Pa.Super. 1984) and PARC Holdings, Inc. v. Killia, 785 A.2d 106 (Pa.Super. 2001).

4

included the right to provide the property with electricity. In answering the question in the affirmative, the Dowgiel court reviewed the language and circumstances from various cases and concluded that "the weight of authority" favored a construction of easements to allow for utility access where the way was granted or reserved without any expressed limitation of its use.

PARC Holdings, Inc. v. Killia, 785 A.2d 106, 113 (Pa.Super. 2001) (some internal citations omitted). In PARC the dispute was whether a right-of-way that had language for "ingress and egress" included the right to install utilities. The language of the right-of-way in PARC was as follows:

> EXCEPTING AND RESERVING unto the Grantor, its successors and assigns a non-exclusive fifty (50) foot wide right-of-way, with Grantee, their heirs and assigns, **for ingress and egress to certain land now owned by Grantor** consisting of approximately 46 acres and adjoining the land hereby granted, the centerline of which Right-of-Way shall be an extension of the centerline of Chapel Crest Terrace, a fifty (50) foot street, and shall extend from the most northerly extremity of Chapel Crest Terrace, as currently existing, along the centerline of said Chapel Crest Terrace, as extended, in a northwesterly direction approximately thirty (30) feet to the southern border of the land now owned by Grantor and to be benefitted [sic] hereby.

Id., 785 A.2d 106, 109 (Pa.Super. 2001) (emphasis in original). The language at issue in the case at bar is as follows:

> Together with the right of **ingress and egress over, through and upon a certain 14 foot easement for a road right of way** running over through and upon land now or late of Henry W. Kazik, et al, commencing and leading and extending from Headrick's Road in to the land of said grantees a distance of 100.66 feet more or less, said easement for the road right way is situate along the southeasterly boundary line of Kazik land as forth in Deed Book 1008, Page 839. The parties hereto further agree that maintenance of said right of way will be the responsibility of the grantees, their heirs and assigns.

Plows' Complaint in Equity, Exhibit A.

5

The Supreme Court of Pennsylvania, in Dowgiel[3] (whose rationale was relied on by the Court in PARC cited above) held that the right to use a road to and from one's habitation includes the right to erect poles along that road on which may be strung wires for the transmission of electricity to and from that habitation. In doing so the Court rationalized:

> To erect poles along the private road and to string on those poles wires for the transmission of electricity to and from the home of defendants, James and Esther Reid, to the power line on the main highway, is a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity, the same being obtainable only by the means above stated. Such a use is in this modern era one of the ordinary purposes of such a way; on this record this use appears to be a reasonable one and it further appears that it does not constitute an additional burden on the servient estate except possible one of a trifling character.

Dowgiel v. Reid, 59 A.2d 115, 121 (Pa. 1948).

Finally, the Pennsylvania Superior Court in Pope v. Muth, likewise relied on Dowgiel to hold that "it would be entirely unreasonable to grant appellees permission to construct a road to connect their future home with a main road and then to deny them the ability to live in the home in a manner consistent with accepted, modern standards." Pope v. Muth, 481 A.2d 355, 357 (Pa. Super. 1984). Thus, when taken as a whole it seems clear that Pennsylvania law supports the proposition that a right-of-way easement for access to a residence or for "ingress and egress" necessarily includes utility access "over, through and upon the land."

---

[3] Of note is that the Pennsylvania Supreme Court, in Dowgiel, also explicitly held that its ruling expressly overruled its prior decision in Allen v. Scheib, wherein the Court had held "But plaintiff's right to lay or authorize another to lay a line of gas pipe therein depends upon the nature of her ownership. If an easement, then she can use it only for the purpose for which it was established or dedicated, and cannot lay a pipe line therein." (original citations omitted) See Dowgiel, 59 A.2d 115, at 121. In PARC the Pennsylvania Superior Court recognized in a footnote that Allen had been overruled by Dowgiel as well. See PARC, 785 A.2d 106, 110, n. 2.

6

In making our decision we gave little weight to either parties' descriptions of their neighbors' behavior. The Court has found in property disputes that well-meaning people lose sight of the issues because they have become so wrapped up in detesting their neighbors' existence. That seemed to the Court to be the case in this particular dispute. We did however, credit the evidence offered by the Plaintiff as to the difficulties experienced with the on-site septic system and the fact that connecting into the municipal sanitary sewer system would make the residence "livable."[4] We also conducted an in-person view of the premises. After hearing all the evidence and reviewing the law, the Court attempted to equitably craft a remedy so that the Plows could tap into the sanitary sewer lines and enjoy the modern conveniences appurtenant thereto but also assure that the Roles would not be unduly burdened by this process. We made the Plows responsible to return the road to its state prior to the installation, we made a provision that there must be 72 hours prior written notice to the Roles and we also made the Plows responsible for reinstalling a cable on the Roles property to its preconstruction condition after its removal. We are unsure, based on the procedural history of this case, if such installation has ever even been attempted. Nonetheless we ask that the Honorable Pennsylvania Superior Court affirm our decision as we believe it is supported by the application of these facts to the current law of this Commonwealth.

BY THE COURT:

Patrick T. Kiniry, Judge

---

[4] The Court in Dowgiel used this adjective to describe the addition of electricity to the litigants residence.

7